THE CONTINENTAL IMPROVEMENT COMPANY v. PHILEMON PHELPS.

*Railways—Fencing—Statutory construction—"Adjacent occupants."*

A railway company is under no common-law obligation to fence its track at the peril of responding in damages for injuries arising from its neglect to do so.

An act "to revise the laws providing for the incorporation of railroad companies" does not violate the constitutional requirement that the object of every law shall be expressed in its title, if it includes

the substantial provisions of a former law imposing a liability upon railway companies for injuries resulting from neglect to fence the track.

Long practical construction of an important statute as valid, and acquiescence in and reliance on the faith of it, will outweigh any merely technical objections to its constitutionality based on a want of precision in setting forth its purpose in its title.

The owner of property half a mile distant from a railway is not an "adjacent occupant or proprietor."

The Michigan General Railroad Law of 1855 and the acts amendatory thereto were superseded by the General Railroad Law of 1871.

Error to Kent.    Submitted Oct. 26.    Decided Jan. 5.

CASE.    Defendant brings error.    Reversed.

*Hughes, O'Brien & Smiley* for plaintiff in error.    A railroad company would not be liable at common law for injuries caused by its neglect to fence its track :    *Gardner v. Smith* 7 Mich. 410.

*Eugene Carpenter* and *George H. White* for defendant in error.    Where the title of an act represents it as to *revise* another, it means to arrange and classify, not alter or amend : *Langdon v. Applegate* 5 Ind. 327 ; a title cannot constitutionally cover legislation that is incongruous with it : *People v. State Ins. Co.* 19 Mich. 398 ; *Indiana Cent. R. R. v. Potts* 7 Ind. 681 ; the Michigan General Railroad Law of 1871 is so multifarious as to be within the constitutional prohibition against an act's containing objects not stated in the title : 1 Kent's Com. 519 ; *State v. Wilson* 7 Ind. 516 ; *Igoe v. State* 14 Ind. 239 ; *Supervisors v. Heenan* 2 Minn. 330 ;. *Bossier v. Steele* 13 La. Ann. 433 ; *Mewherter v. Price* 11 Ind. 199 ; *Foley v. State* 9 Ind. 363 ; *Gillespie v. State* 9 Ind. 380.

GRAVES, J.    On the 29th of April, 1871, the Improvement Company was occupying and using the road of the Grand Rapids & Indiana Railroad Company, and Mr. Phelps was owner and proprietor of one hundred and sixty acres lying away from the railroad and separated from it by

a quarter section of unenclosed lands. He lived about a mile and a half from the railroad and owned no land situated nearer to it than the one hundred and sixty acres just mentioned. There was no fence or other obstruction sufficient for partition fences on either side of said railroad. On the day mentioned a yoke of oxen, the property of Mr. Phelps, strayed on the track and in the evening a passenger train encountered them on it away from a highway crossing and ran against and so injured them that they were worthless, and one died soon after and the section foreman killed the other.

Every reasonable effort was made by the engineer and other employees in charge of the engine and train to stop and avoid the accident, and there was no carelessness or negligence on the part of the company or any of its employees unless the failure to fence the road should so appear.

This statement of the facts is drawn almost *verbatim* from the record; and although the law of the case requires no such detail a full and accurate recital seems the best way to dispose of some of the views set forth in one of the briefs handed to the court.

Mr. Phelps brought his action on the case and counted on the neglect to fence out cattle and construct cattle-guards. He made no claim in his declaration that the cattle were killed wilfully or maliciously, and if he had it would have been negatived by the facts in the record. It does not appear from the case that the cattle were ever on the unenclosed quarter section or that they could go there without trespassing. What does appear is that they strayed upon the track where they had no right to be; but from what immediate premises is not explained. These matters are really unimportant, and they are only alluded to for the same reason given above.

Mr. Phelps was allowed to recover, and the only ground for it was that there existed a duty in his favor in point of law to fence the track, and that the failure in that duty and the loss occasioned by it gave him a title to sue for the

damage. The plaintiff in error denies that it was incumbent on it, as the law then stood, to fence against Phelp's cattle at the peril of being bound in case of not doing so to pay him for injuries accidentally inflicted on them when straying on the track, and this presents the real question to to be decided.

That no such obligation was recognized by the common law is certain. *Williams v. Railroad Co.* 2 Mich. 259. If then there was any, it must have arisen from contract or been imposed by statute. It is not claimed to have proceeded from contract, and it remains to see whether there was a legislative foundation for it. The defendant in error contends that there was.

Since the passage of the General Railroad Law of 1855 the Legislature has several times handled this subject and the various enactments have not been uniform. The substance has more or less varied according to the existing views of those temporarily in legislative authority, and the provision now extant differs essentially from that adopted in 1871.

By Act No. 33 of the session of 1869, (Laws 1869, vol. 1, p. 49,) to amend section 43 of the general law of 1855, the duty to construct fences was enjoined and neglect was visited with liability in favor of persons damnified, without reference to whether their possessions bordered on the railroad or not; and this regulation was in force when the cattle were killed on the 29th of April, 1871, unless it was done away with by the law of 1871 which took effect on the 18th of April, or eleven days before the accident. By the act last mentioned (Laws 1871, vol. 1, p. 328), "to revise the laws providing for the incorporation of railroad companies," the duty to fence was equally imposed; but instead of making the liability for neglect the subject of an action by any person suffering loss, without regard to whether their places did or did not adjoin the railroad, as was done by the act of 1869, it extended the liability no further than to a specific class, namely, to "*adjacent occupants or proprietors.*" It is virtually admitted that Mr. Phelps was not

an *adjacent occupant or proprietor*, a very proper concession. Webster's Dictionary; Comp. L. § 3 clause 1; *People v. Schermerhorn* 19 Barb. 540; *Holmes v. Carley* 31 N. Y. 289; *Wakefield Local Board v. Lee* 1 Exch. Div. 336 : 18 Eng. 341. And the question resolves itself into the inquiry, therefore, whether the act of 1869 remained operative and was applicable on the 29th of April notwithstanding the promulgation of the act of 1871 which occurred eleven days earlier. The defendant in error contends that it did and the plaintiff in error denies it.

The point to be first noticed is one made by defendant in error that the act of 1871 conflicted with the constitutional provision that "no law shall embrace more than one object, which shall be expressed in the title," and therefore never became a law. The object, it is said, was not disclosed by the title with constitutional distinctness, and the provisions were not sufficiently coherent to be joined in one act. The point requires no special discussion. It is now more than ten years since the act was passed and dovetailed into our system of important statutes. The people and the government have acquiesced in it as a piece of legislation lawfully enacted and interests of vast magnitude have meanwhile sprung forth and flourished under it. The whole country has acted on the faith that it originated legitimately and constituted a valid statute; and if we were satisfied that the Legislature stumbled and overlooked something which a nice regard for the clause referred to would have prompted, we should deem it our duty to yield to the long practical construction and acquiescence, and decline to set up a view which would reach back and overturn the statute and uproot and destroy an array of interests it would be difficult to either measure or number. But we think the objection is fully refuted by the course of previous decisions which substantially cover it. *People v. Hurlbut* 24 Mich. 44; *Swartwout v. Mich. Air Line Ry. Co.* id. 389; *Conn. Mut. Life Ins. Co. v. State Treasurer* 31 Mich. 6; *Kurtz v. People* 33 Mich. 279; *Attorney General v. Bradley* 36 Mich. 447.

A further objection of the defendant in error is that the

act of 1871 neither repealed nor superseded the act of 1869, and in support of this it is contended: 1st, that both enactments were capable of standing together; and 2d., that section 36 of the act of 1871 was not intended to withdraw the Grand Rapids & Indiana Railroad Company and other corporations FORMED under the statute of 1855 from the statute of 1869, nor to withdraw this last statute from such corporations; because it did not purpose to include corporations formed under prior statutes, but provided in express terms that it applied to companies FORMED under the same act of which it was a constituent part. To take away the entire basis of this last position it is only necessary to refer to a single clause found in the same statute of 1871. The last branch of section 50 declared that "the provisions of this act shall apply to all companies incorporated or existing under the act entitled 'An act to provide for the incorporation of railroad companies' approved February twelfth, eighteen hundred and fifty-five, and the several acts amendatory thereof."

The other part of the objection has no better foundation. As expressed in the title the act of 1871 was intended as a revision or in other words a reduction, under desired modifications, of the various scattered provisions into one harmonious act to operate in the place of those provisions, and section 36 was by express words made applicable to all corporations which had come into existence under the general law of 1855, and therefore applicable to the Grand Rapids & Indiana Railroad Company as one of that class. It was not intended that those corporations should be singled out and made subject to duplicate and differing duties, obligations and liabilities, which would necessarily have been the case had the act of 1869 been allowed to continue in force. On the contrary it was the evident purpose of the Legislature that the amendment of 1869 to the act of 1855 should fall with the act to which it was attached and of which it formed a part, and be superseded by the new provision. *Shannon v. People* 5 Mich. 71; *U. S. v. Claflin* 97 U. S. 546. The

reasoning to substantiate this conclusion might be much further carried, but it is unnecessary.

According to the facts reported in the record there was no cause of action against the company and the jury should have been instructed in conformity with the fifth request preferred by it.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.