MOSES TAGGART, ATTORNEY GENERAL, v. THE BOARD OF SUPERVISORS OF SANILAC COUNTY.

*Taxes—Constitutional law—Title of act—Mortgage-reporting law —Assessment—Double taxation.*

1. Act No. 262, Laws of 1887, providing for the reporting by registers of deeds of mortgages for assessment purposes, is not unconstitutional.

2. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN, with whom Justices MORSE and LONG concur:

  *a*—The object of the Legislature was to provide a method whereby values represented by mortgage securities could be brought to the attention of the assessing officer for the purposes of taxation.

  *b*—The act in question does not separate mortgages from other personal property, and require the taxing officer to list and assess them as mortgages at the amount they purport to secure.

  *c*—It is competent for the Legislature to assess and tax securities representing values. Whether it is the best plan to adopt, or whether it is expedient to do so, is not a judicial but a political question, resting solely with the Legislature.

  *d*—The constitutional rule of uniformity forbids that taxation should be double. No person can be twice assessed upon the cash value of the same property, to defray a public burden.

*e*—The general taxing law requires all property to be assessed for taxation at its true cash value. It does not, therefore, follow that the assessing officer is authorized to assess a mortgage security at the amount it purports to secure, but he must ascertain, according to his best information, its true cash value.

*f*—There may have been payments made upon the mortgage, which the record does not disclose, or it may have been taken merely as an indemnity, or to secure the performance of some act other than the payment of money. The land may not be worth the face of the mortgage. There may be prior mortgages, and many other contingencies which affect the true cash value. All these the assessing officer may consider, and it is his duty to ascertain, from inquiry of the person to be assessed, and other sources, in order to ascertain the true cash value of the mortgage.

*g*—For the purposes of assessment, the note or bond, and the mortgage that secures it, is considered as one value or property.

*h*—The requirement that the register of deeds shall not record any mortgage which does not state the name and residence of the mortgagor is an *essential* part of the scheme for affording information to the assessing officer, and to prevent an evasion of the law.

*Mandamus.* Submitted May 9, 1888. Granted June 22, 1888.

Relator applies for *mandamus* to compel respondents to obey Act No. 262, Laws of 1887, providing for reporting mortgages for assessment purposes. The facts are stated in the opinion of SHERWOOD, C. J.

*Moses Taggart,* Attorney General (*M. C. Burch,* of counsel), for relator.

*Marston, Cowles & Jerome,* for respondents.

[The points of counsel and authorities cited will be found in the opinions.—REPORTER.]

SHERWOOD, C. J.   The Legislature of 1887 passed an act, before its final adjournment on June 29 of that year, entitled :

" An act to provide for reporting all mortgages, by the several registers of deeds of this State, to the supervisors and assessing officers of their respective counties, and to the registers of deeds of other counties wherein the mortgagee resides, for assessment purposes, and providing blank form-books therefor ; also prescribing the duties of registers of deeds relative to the recording of mortgages,"—

And which is Act No. 262, and was approved by the Governor on June 27, 1887. The act went into effect on September 28, 1887.

On September 30, 1887, the executive department addressed the following letter to the clerk of Sanilac county :

" MICHIGAN DEPARTMENT OF STATE.

"OFFICE OF SECRETARY, LANSING, September 30, 1887.

" To the County Clerk, Sanilac Center, Mich. DEAR SIR : Appended hereto is the text of an act of the Legislature of 1887 relative to the assessment of mortgages. A careful perusal of sections one and two of this act will acquaint you with the duties of the boards of supervisors in connection therewith. Please bring the matter to the attntion of the board at their October session, and have them take action with regard to the necessary books, as required by section 2 of the act.

" Very respectfully,     G. R. OSMUN,

" Secretary of State."

The county clerk did as requested, and the board of supervisors, on October 18, 1887, took the subject of the requirements of said act of the Legislature under consideration, and finally passed a resolution in which they decided that they would take no action required of them by the provisions of the act in question, and have since adhered strictly to such resolution.

The relator, therefore, at the last January term of this Court, filed a petition for an order against the respondents, requiring them to show cause why a *mandamus*

should not issue against said board of supervisors commanding them—

"To perform their duty, in accordance with the provisions of said sections one and two of said act of 1887, and commanding and requiring them to ascertain the number of assessment districts in their county, and to determine the number of books necessary for their own county, as in and by said sections one and two they are required to do, and commanding and requiring them to report in detail, as a part of their proceedings, and commanding and requiring them to instruct the register of deeds of said Sanilac county to make an order for said books upon the Secretary of State, and to accompany said order by a certified copy of the report adopted by said board, in accordance with the provisions of said section two of said act, as they are required to do."

Respondents filed a demurrer to relator's petition, and upon the issue thus framed the matter was heard. Counsel for respondents, to sustain their demurrer, make the following points against the law of 1887 in question:

"1. The law in force at the time this act was passed, and at the present time, does not provide for assessing mortgages.
"2. This act is in clear violation of section 12, Art. 14, of our Constitution.
"3. Double taxation cannot be avoided under this act.
"4. This act is in violation of section 20, Art. 4, of the Constitution, as it embraces more than one object."

There is nothing to the first point. Included among the property to be taxed, specifically mentioned, are "notes and mortgages." See section 13, subd. 2, Laws of 1885, p. 179. See, also, section 2, p. 175, Laws of 1885. Section 1 of the act of 1885 says that—

"All property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

And section 2 says that personal property shall include—

"All indebtedness due to inhabitants of this State, whether such indebtedness is due from individuals or from

corporations, public or private, and whether such debtors reside within or without the State."

Mortgages are nowhere excepted out of the taxable property. It was evidently the intention of the Legislature, under our tax laws as they now are, to make personal property bear its just proportion of the burdens of taxation, and I find no constitutional objection to this being done. Article 14, § 11, provides that—

" The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law."

And section 12 of the same article provides that—

" All assessments hereafter authorized shall be on property at its cash value."

It has long been the policy of our tax laws to make all property, except as exempted by the Constitution, taxable; and I have yet failed to discover why the rule is not a just one, and why the law of 1885 does not include mortgages. Evidently, the Legislature supposed it had made such property taxable when it passed the law of 1887, now under consideration. The assessor is required, under it, to list and assess all the taxable property to be found in the township of every individual, including mortgages. See sections 12–16, Laws of 1885, pp. 178–181. The language of the statute is too plain to be mistaken or misunderstood.

The respondents' second point is not well taken,—that the law is in violation of the provision of the Constitution which says—

" All assessments hereafter authorized shall be on property at its cash value."

I know of no reason why property in real-estate mortgages cannot be assessed at its cash value, as well as any

other personal property. Such property is very largely dealt in by nearly all classes of business men, and the various kinds have a rated value according to the extent of the security and personal responsibility of the party whose obligation is secured, if any; and I know of no reason why the assessing officer may not as well ascertain that value as any other business man. The law of 1887 certainly contains nothing depriving him of the means of investigation, or the use of his reason, judgment, and experience, in determining the cash value of a mortgage, any more than fixing such value upon any other kind of property. I can find nothing in the law in violation of either the letter or spirit of the provision of the Constitution last referred to. The assessment is required to be made according to law, and at the cash value of the property.

The claim that double taxation cannot be avoided under the act cannot be sustained. This is the respondents' third point, and much is claimed for it; but I cannot take the view so earnestly urged as controlling in the case by the learned counsel for the respondents. I do not think the law provides for double taxation. In order to have double taxation, the same property must be taxed twice, when it should be taxed but once. The law of 1887 creates no such injustice. When an indebtedness is secured by mortgage on real estate, and the mortgage becomes property more valuable and desirable than the land itself, there is not, nor can be, any good reason why the mortgage should not be taxed to assist in bearing the public burden; and any course of reasoning which would exempt the property in the mortgage, and make the land bear the burden of taxation which should be shared by the holder of the mortgage, would not only be unequal and unjust, but would, I think, be getting about as near double taxation as can be reached without

having it pure and simple.  The land has not only its own tax to pay, but shares in the payment of the amount the mortgage should bear.

Taxation of credits is not unjust taxation; and it has been decided in several states not double taxation.  *People v. Rhodes*, 15 Ill. 305; *People v. Whartenby*, 38 Cal. 461; *People v. McCreery*, 34 Id. 461; *Lick v. Austin*, 43 Id. 590; *People v. Eddy*, Id. 331.  Double taxation—

"Is against the spirit of our laws, and no statute will be construed to impose double taxation unless required by express words or necessary implication.  Yet, when it contravenes no constitutional provision, the court cannot declare it illegal.  The fact that the same value is twice taxed does not render it void."  Burroughs, Tax'n, § 49; Cooley, Tax'n, 158; *Mayes v. Erwin*, 8 Humph. 290; *Yuba Co. v. Adams*, 7 Cal. 35; *Society v. Yard*, 9 Penn. St. 359; *Coite v. Society*, 32 Conn. 173; *Bridge Co. v. Osborn*, 35 Id. 7.

"Where property is taxed in one state on account of the residence of the decedent, and in another because the evidences of debt in the hands of the anciliary administrator are in the latter state, the fact that it will be thus subject to double taxation is not weighed at all by the courts of the latter state.  Such taxation may be unjust, but the court cannot disregard the law because it has that effect."

It comes of the two different jurisdictions; neither having influence and control in the other.  The act does not violate the provision of the Constitution that taxation must be uniform.  All mortgages are made taxable, if the assessor can find them, at their cash value, the same as any other taxable property.  I hardly think the act subject to the criticism made by the counsel for the respondents in this regard.

The respondents' fourth point is that the act is in violation of the Constitution, "as it embraces more than one object," and both are expressed in its title.  It is claimed by counsel that one object is "to provide for

reporting mortgages for assessment purposes," and the other is, "prescribing the duties of the registers of deeds relative to the recording of mortgages." I cannot regard the title as obnoxious to the clause of the Constitution referred to (Article 4, § 20). The object of this act, and the only object, is to bring property in mortgages on real estate to the knowledge and attention of the assessor. This, of course, is for the purpose of listing it, that it may be valued in the assessment roll. This constitutes but a single object ; and anything germane to this object, and necessary to its accomplishment, may be contained in an act having this object expressed in its title. The object expressed and intended in this title is certainly beyond cavil or question. It is to bring into the assessment roll mortgage property for taxation ; and, if all the means by which it was to be done were expressed in its title, the object could not be obliterated and obscured, nor would it be adding a new object.

The law prescribes that the register of deeds shall not record a mortgage unless it contains a statement of the place of residence of the grantee. This is of very great importance in carrying out the object of the act, and the services of the register and the books of his office are very largely used in carrying the law into effect. And the statement in the title, that the act is to prescribe "the duties of registers of deeds relative to the recording of mortgages," does no more than state a part of the means by which the object of the act is to be carried out, and is not subject to the objection made to it.

"None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in its title." *Phillips v. Bridge Co.*, 2 Metc. (Ky.) 219.

Two distinct and separate objects having no connection

with each other, or relating to the same subject, would, if incorporated in a title, render the act invalid; and a statute cannot operate beyond the purposes expressed in its title. *Bates v. Nelson,* 49 Mich. 460 (13 N. W. Rep. 817).

The views of this Court upon the subject of the requirements of the Constitution under the section we are now considering have frequently been expressed, and no case which I have been able to find goes to the length of sustaining the doctrine contended for by counsel for respondents. I refer to a few of them. *People v. Mahaney,* 13 Mich. 481; *Inkster v. Carver,* 16 Id. 484; *Ryerson v. Utley,* Id. 270; *People v. Denahy,* 20 Id. 349; *Conn., etc., Ins. Co. v. Treasurer,* 31 Id. 6; *Kurtz v. People,* 33 Id. 279; *Continental Improvement Co. v. Phelps,* 47 Id. 299 (11 N. W. Rep. 167); *People v. Wands,* 23 Id. 385. The act in question is not as perfect as it might be, but it is certainly not so imperfect as to be incapable of enforcement; and, so long as such is the case, it cannot be declared unconstitutional because of its imperfections.

I am not able to agree with the learned counsel for respondents that the interest in a mortgage is not property. The value of land and all tangible personal property is measured, for the purpose of taxation, as well as for all other purposes, by the unit of value; and the value of property or the interest in a mortgage is measured by the same standard, and in the same way. The mortgage, at the present time, claims and constitutes nearly or quite one-third of all the property in the country, and is regarded as the most desirable property to possess and hold. If there is any reason why a mortgage interest, so long as it continues, should not be regarded as property, and its possessor assessed for the same, for the maintenance of the government and the support of our educational and benevolent institutions, I have yet failed to dis-

cover it. The reasons for assessing this class of property are cogent and sound. Justice between citizens owning property requires it; and I know of no principle or policy forbidding it, consistent with the prosperity of the people.

I think the law is constitutional, and no sufficient reason exists why the respondents should not comply with its requirements, so far as they have duties to perform under it; and the writ of *mandamus* should be granted, as prayed. No costs will be given.

CHAMPLIN, J. The object of the Legislature, in the enactment under consideration, was to provide a method whereby values represented by mortgage securities could be brought to the attention of the assessing officer for the purpose of taxation. It does not segregate mortgages from other personal property, and require the taxing officer to list and assess them as mortgages at the amount they purport to secure. The personal property of an individual, consisting of the various kinds mentioned in the general laws for taxation, is assessed as "personal," in one item. In this respect, the act in question has in no wise altered the existing law.

When the mortgages are brought to the attention of the assessing officer by the method proposed by this law, he is required to assess them in the same manner as other personal property, so that no change was designed in the mode of assessment. Before this law was enacted, there was nothing that prevented the assessing officer from going to the office of the register of deeds for his county, and ascertaining who, in his taxing district, held mortgages; and this information, thus obtained, he could use in assessing those liable to be assessed in his district as the owners of personal property.

The law then and now authorized the supervisors to require a sworn statement from any person, containing a list of real and personal property liable to taxation; and

this list included all notes, bonds, and mortgages.   This requirement being of an inquisitorial nature, and very distasteful to the tax-payer, and resting entirely in the discretion of the supervisor, was seldom resorted to ; and the consequence was that but very little of this kind of personal property was listed or taxed ; or, if assessed, it was not done uniformly, but generally the burden was laid upon those who were honest enough to disclose to the supervisor the securities they held which were taxable, while the greater number did not so disclose their taxable property, and thus escaped the burden of taxation altogether.

The object of this law was to place all alike before the taxing officer, that each may bear his just proportion of the public taxes; and, so long as credits or securities are taxed, I can see no objection to making such taxation as uniform as it is possible to do. I think it is competent for the Legislature to assess and tax securities representing values. Whether it is the best plan to adopt, or whether it is expedient to do so, is not a judicial but a political question, resting solely with the Legislature.

The power of the Legislature over the subject of taxation is plenary.   The Constitution provides that—

"The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law.   All assessments hereafter authorized shall be on property at its cash value."   Article 14, §§ 11, 12.

The rule of uniformity forbids that taxation should be double.   No person can be twice assessed upon the cash value of the same property, to defray a public burden. The general law relative to the assessment of property, and the levy and collection of taxes thereon (Laws of 1885, p. 175), provides that all property within the jurisdiction of this State, not expressly exempted, shall be subject to

taxation. It then prescribes what shall be considered and assessed as real estate, and what personal property, for the purpose of taxation, and among personal property is included "all indebtedness due to inhabitants of this State"

The general taxing law requires all property to be assessed for taxation at its true cash value. It does not, therefore, follow that the assessing officer is authorized to assess a mortgage security at the amount it purports to secure. He must ascertain, according to his best information, the true cash value of the mortgage. There may have been payments made upon it, which the record does not disclose. It may have been taken merely as an indemnity, or to secure the performance of some act other than the payment of money. The land may not be worth the face of the mortgage. There may be prior mortgages, and many other contingencies which affect the true cash value. All these the assessing officer may consider, and it is his duty to ascertain, from inquiry of the person to be assessed, and other sources, in order to ascertain the true cash value of the mortgage. For the purpose of assessment, the note or bond, and the mortgage that secures it, is considered as one value or property.

The requirement that the register of deeds shall not record any mortgage which does not state the name and residence of the mortgagor is an essential part of the scheme for affording information to the assessing officer, and to prevent an evasion of the law.

I do not perceive anything in Act No. 262, nor in its title, when rightly construed, to carry out the intent of the Legislature that is in conflict with the Constitution.

·MORSE and LONG, JJ., concur with CHAMPLIN, J., by signing his opinion

MORSE, J. I think the law as it now stands, taxing the land to its full value, and at the same time taxing a mortgage upon it at its full cash value, is open to the complaint of double taxation. But the land-owner has an equal right to complain of this double taxation as well as the holder of the mortgage ; and the taxation of the land, and of the mortgage upon it, being provided for in the same statute, if this double taxation is unconstitutional, and therefore void, I can see no reason why the taxation of the amount of the value of the land mortgaged to the land-owner should not be held invalid, as well as the tax upon the mortgage. If one shall escape taxation because of double taxation, which one is it to be, and why one species of property more than the other? If one tax is void, the other must be for the same reason, and the value of mortgaged property must escape taxation altogether.

But double taxation is not necessarily unconstitutional. There must be more or less of double taxation under the best scheme that can be devised by human ingenuity ; and while injustice in some cases must always be done, if the main purpose and effect of the methods of taxation are in the interest of fairness, equality, and justice, such taxation will be upheld and sustained by the courts.

"No conclusive case is made against a tax when it is shown that it reaches twice the same property for the same purpose. This may have been intended, and, in many cases at least, is admissible." Cooley, Tax'n, 162, 163.

It would not be permissible, under our Constitution, to require one person to be so taxed that he would directly contribute twice to the same burden, while others were required to contribute but once. But that is not this case.

If it were in my power, I think I could find a way to

remedy this double taxation, and so perfect the law as to tax mortgages without directly taxing the value of the mortgaged premises also. Whether this would be good policy, or whether the law as it now stands is for the best interest of the people, is no concern of the courts. Whatever may be our opinion as individuals, it remains for us only to declare the law as we find it, let the result to the people be as it may.

If this policy of taxing mortgages, inaugurated by the Legislature, shall be of evil consequences to the people of this State, as foretold in the argument for the respondents in this Court, the people will, no doubt, through the proper channel,—the Legislature of their own choosing,—remedy such evil. At least, we are powerless. We are not here to act upon our ideas of what the result of this law may be. If it does not encroach upon the constitutional rights of the tax-payer, and neither the title nor the body of the act is in conflict with the Constitution, it must stand, as far as the courts are concerned. We can neither alter nor abrogate it to suit our notions of its policy or results.

The writ should be granted.

CHAMPLIN and LONG, JJ., concur with MORSE, J., by signing his opinion.

CAMPBELL, J., (dissenting). Relator asks a mandamus to compel respondents to direct the register of deeds of Sanilac county to order from the Secretary of State a set of blank books for reporting mortgages for assessment purposes, under Act No. 262 of the Laws of 1887. Respondents deny their obligation to do so, basing the denial on the legal insufficiency of that statute to impose such an obligation on them.

The title of this act, as well as the body of it, includes a provision entirely distinct from any duty of county reg-

isters in preparing the books for assessment purposes, which is intended to be an amendment of the registry laws, and which declares that mortgages not setting out the residence of the mortgagee shall not be recorded. This is a very important provision, which no one would ever think of looking for except in the recording laws, and ignorance of which may practically defeat honest mortgages. I do not think it competent to include in one statute every possible subject which may incidentally become important in connection with its subject-matter. If this could be done, the constitutional safe-guards against duplicity in statutes would be of no use. There are very few subjects concerning property which do not come into consideration in taxation. The persons to be taxed, the property to be taxed, and the locality of taxation may and do involve the laws of inheritance and of administration, as well as many others; but certainly it would not be competent in a tax law to change any of these rules or conditions. The formalities of mortgages are chiefly to provide means of perpetuating, in the local records, notice of the rights of the respective parties, to warn buyers and subsequent incumbrancers, and to preserve evidences of title. A failure to comply with any requisite of the recording laws may destroy the validity of the record; and non-resident mortgagees, at least, are not bound to look at our taxing laws for any purpose outside of the land tax. It seems to me incompetent to make an essential change in the recording laws in an obscure section, in a law relating only to purposes of taxation.

But I think the law, in its bearing on mortgages as distinct subjects of taxation, is not a valid exercise of the taxing power. I do not doubt the right of the State to tax such interests as depend upon its jurisdiction and protection. But our State Constitution itself has regulated this matter on sound and correct principles, and this law

is a distinct departure from the constitutional provisions on the subject.

A mortgage, under our legislation, conveys no legal or equitable estate in land. It is no more and no less than a collateral security upon land, which has no value in itself, but depends entirely on some outside obligation, from which it is inseparable. If it is given to secure a debt, it belongs to the owner of that debt, and passes with it to any lawful holder without assignment. If the debt is negotiable, it passes to any one to whom the paper belongs. If it is given to secure several debts or several installments, it belongs ratably to as many persons as there are owners of these. It may be given by way of indemnity, and in that case it may never have any money value. It may be given for a debt amply secured by other mortgages on other property; or it may be on property already so heavily incumbered as to make it no security at all. So the mortgagee may be a mere trustee, with no interest himself in it.

This law provides for certifying, by the county register of any county, to the various assessors in his own county, or to the registers of other counties, for similar information to their local assessors, the date, amount, and parties, and other ear-marks of all mortgages appearing in his books. It gives him no means of ascertaining the amounts due, and it does not require him to report the times or conditions of payment, the condition of the property as to other incumbrances, or the value of the land. It may be entirely paid, or paid in part; it may be on property of no value, or incumbered already up to its value; and the mortgage may be one which the mortgagee has assigned to some one who has not recorded his assignment, or which he has discharged.

The mortgage, thus certified by its original amount, and in the name of the original mortgagee, whether for

indemnity or security, and whether valuable or worthless, is in due course to be assessed from the book by each assessing officer, under peril of punishment for misdemeanor.

This statute does not undertake to assess the creditor for his credits secured by the mortgage, and to the amount actually due on such credits; but it treats the mortgage as an interest in land taxable at its face as such, without reference to the value of the land, or the nature or value of the debt. It furnishes no means to the assessor in one county of estimating the value of the land, and it gives no protection to the supposed mortgagee against the worst kind of injustice. If we assume that our Constitution provides for the taxation of every kind of value,—which I think it does not do in the way claimed,—that instrument is express that taxation must be uniform, and must be on an assessment based exclusively on its cash value, or else it must be a specific charge or tax, which must also be uniform.

No tax law can be valid which does not provide for securing such uniformity. Of course, it is not necessary to attempt impossibilities. Uniformity, as well as value, may involve some exercise of opinion or discretion, and cannot be absolute. But a law which does not provide directly for satisfying these conditions as far as practicable cannot be a valid exercise of the taxing power, and cannot be upheld as conforming to the Constitution.

The law in question is bad for violating both of these conditions. If a mortgage can be treated as a direct interest in lands, there seems to be no reason why the residence of the mortgagee should make any difference. But this law does not treat residents and non-residents alike; and it was held by the United States Supreme Court, in the case of the *State Tax on Foreign-held Bonds*, 15 Wall. 300, that a state could not tax the securities of

non-residents, and that mortgages were no more than securities, and not subject to local jurisdiction. Moreover, there is a lack of uniformity arising out of the fact that, under this law, land not incumbered can only be taxed up to the single value of the property; whereas land mortgaged is taxed for the additional amount of the mortgage, when it cannot possibly be worth any more on that account. It has already been pointed out that the law furnishes no means whatever for getting at the cash value of the mortgage interest. And, furthermore, if the same debt or liability is secured by different mortgages, in the same or different counties, the danger of double taxation and of excessive valuation is multiplied.

It cannot be possible to have double taxation valid under our Constitution. It not only destroys uniformity of burdens, but in so doing involves the other considerations referred to.

Under our laws, from the beginning of the territorial and State organizations, land has always been taxed as land, upon its valuation as such. In levying taxes, they are made to cover all the combined interests which exist in it, whether legal or equitable, freehold or not freehold, present and vested, or future and contingent. If the land tax is not paid, the whole aggregation of interests will be divested by a tax sale. This law does not enable the mortgagee who pays taxes on his mortgage interest to hold it discharged in case of a sale for taxes. He has no protection whatever out of his payment. And, on the other hand, if he does not pay it, the law gives the State no lien upon it for the non-payment of mortgage taxes where the land tax is paid. Any attempt to do this would have brought attention at once to the fallacy of the whole scheme. If the mortgage interest is taxable separately, then nothing else remains

71 MICH—3

taxable but the legal title subject to the lien known as the equity of redemption. All the value that the land-owner has in mortgaged land is this residue beyond the mortgage ; and even that is fallacious, for, on the one hand, the debt may be so secure as to need no recourse to the land, while, on the other hand, the mortgagor may have no hope of redeeming, and no object in it. By taxing the land as land, to its full unincumbered value, the public get taxes on all it can be worth to all parties interested, and there is no other way in which this exact measure is attainable.

I think that this idea was in the mind of the framers of the Constitution when they required taxes to be assessed (except in the case of specific taxes) on property, and at its cash value. Although there is value in things in action, and they may, in a certain sense, be regarded as property, such is not their appropriate designation. Even under our present tax law, they are treated as something distinct from either realty or personalty. It is very certain that there is no wealth in a state that does not ultimately result in one or the other. A personal debt is only valuable because payment of it can be enforced out of property; and it is so enforced, not by creating new values, but by transfer of the same property from one person to another. There is nothing but tangible property out of which taxes can usually be enforced. If all persons were to pay their debts at once, it could only be done by reliance on such property. It is evident that a man who owes more than he can pay cannot fairly be taxed for the ownership of anything; but, if property is taxed as such, it can make no difference to the State who owns it, so long as but one tax is laid upon it. But if every man is taxed for what his neighbor owes him, with no regard to what he owes himself, a capital of a thousand dollars

may stand, among a borrowing community, as the basis of as many thousands as there are borrowers. Such is not the meaning of our Constitution.

In my opinion, this law cannot be sustained on any principle, and respondents should not be required to obey it.