## SCHO v. SOCONY MOBIL OIL COMPANY, INC.

1. NEGLIGENCE—EVIDENCE—TANK TRUCK—FILLING HOSE.

Verdict for plaintiff oil company employee against tank truck owner and its driver for injuries sustained by reason of alleged negligence of the driver in starting to go before filling hose had been removed from tank and which snapped into plaintiff's face *held*, not contrary to the great weight of the evidence, where the evidence presented on the issue was in conflict and plaintiff's version was accepted by the jury.

2. APPEAL AND ERROR—VERDICT—EVIDENCE.

The Supreme Court will not set aside a verdict of a jury if there is substantial evidence to support it, even though it might be in doubt as to the ultimate facts.

3. DAMAGES—EXCESSIVE VERDICT—FACIAL INJURIES—BACK SPRAIN —LOSS OF EARNINGS.

Verdict of $50,000 to 47-year-old plaintiff for injuries received as a result of the negligence of defendant tank truck operator in leaving distributor's filling station before authorized to do so *held*, not excessive, nor to warrant a new trial, where plaintiff sustained a permanent deformity to his nose from several fractures, lacerations on his face, loosened teeth, a back sprain, difficulty in breathing, traumatic nervousness, loss of $100 weekly earnings and any employment with his former employer, and inability to work as watchmaker for which he was skilled.

4. SAME—PERSONAL INJURIES.

The amount allowed in an action at law for personal injuries must rest in the sound judgment of the trier of the facts.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur, Gas and Oil §§ 129, 189.
Negligence and contributory negligence in respect of delivery of petroleum products. 151 ALR 1261.
[2] 3 Am Jur, Appeal and Error § 887.
[3] 15 Am Jur, Damages §§ 211, 212, 223, 226.
Excessiveness of verdict in action by person injured for personal injuries not resulting in death. 46 ALR 1230; 102 ALR 1125; 16 ALR2d 3.

Appeal from Genesee; Baker (John W.), J. Submitted April 12, 1960. (Docket No. 50, Calendar No. 48,135.) Decided June 7, 1960.

Case by Ira Scho against Socony Mobil Oil Company, Inc., a foreign corporation, and Richard Cutler for personal injuries received while loading gasoline truck. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Cline & George* (*Earl J. Cline,* of counsel), for plaintiff.

*Gault, Davison & Bowers* (*William D. Gowans* and *Robert C. Fox,* of counsel), for defendants.

CARR, J. Plaintiff brought this action in circuit court to recover damages for personal injuries claimed to have resulted from negligence on the part of defendants. On April 3, 1957, and for some time prior thereto, plaintiff was employed by the Roseline Oil Company which was engaged in the sale of gasoline in Genesee county. Plaintiff's work involved loading tank trucks with gasoline for his employer and other corporations engaged in the purchase or distribution of said product.

On the day in question the defendant corporation sent its tank truck, operated by defendant Cutler, to the premises of the Roseline Oil Company to obtain gasoline. On behalf of plaintiff it is claimed that it was the duty of the driver of the truck not to start it until the filling operation had been completed, and plaintiff had expressly authorized the removal of said truck. It is not disputed that the hose through which the gasoline was poured into the tank truck, referred to in the record as a "tanker", had not been removed from the truck when defendant Cutler started it in motion. As a result the hose,

being caught in the tank, snapped at the nozzle and struck plaintiff in the face, inflicting lacerations, contusions, and a fractured nose, among other injuries.

Defendants by answer to the declaration denied the alleged negligence on the part of defendant Cutler, asserting that plaintiff had in fact authorized the truck driver to proceed. On the trial in circuit court before a jury testimony was introduced by plaintiff in support of his claims, and by defendants in contradiction thereof. The basic question at issue was whether plaintiff had given defendant Cutler permission to move the truck before the hose had been removed from its contact with the tank or, as claimed by plaintiff, the driver had put his vehicle in motion without waiting for any instruction in that regard as required by the usual procedure in an operation of the character in question. The factual issues were submitted to the jury, which returned a verdict in favor of the plaintiff in the sum of $50,000. Defendants' motion for a new trial was denied, said motion being based on the claims that the verdict was against the great weight of the evidence and that the amount of damages awarded was excessive. From the judgment entered on the verdict, and the denial of the motion for a new trial, defendants have appealed.

On the trial the claims of the plaintiff with reference to the cause of the accident were at variance with those of the defendants. The parties were not in accord as to all of the details attending the loading operation. The following excerpt from the testimony of the plaintiff as a witness in his own behalf indicates his version of what occurred, and also the procedure that he followed:

"*A.* I had loaded, to be exact, special gasoline into the 2 center compartments, because that is evidently how it was asked for. And I had it complete set up

the way I was supposed to do, the way I explained before for the regular gasoline. That means that the regular gasoline was to go into the rearmost compartment as well as the front compartment. Now, I had filled the rear compartment and I had already filled the front compartment. Now, the next thing I did was press the electric button to shut off the action of the pump.

"*Q.* When was that? When did you do this?

"*A.* Oh, that was on April the third.

"*Q.* No. No. When did you do it in the course of filling this truck? When did you shut it off?

"*A.* Well, that was when I had completely filled the regular gasoline in the 2 center and to the rear as well as the front compartments. I felt that I was ready to press that button to shut off the electrical action of the pump. After that I jumped which was normally for me to do, jump off that truck. It was much higher than the platform onto the platform, see. And as I jumped onto the platform the impact normally weered (*sic*) me, sort of, and my face would be toward the steps where you descend. I would jump off, and as I turned about to go to the hose in order to reach it and drain it, the last thing I knew of that something terrific hit me in the face. Now, I had neither, to my knowledge, given any call by voice or by person, nor had I been downstairs to remove the slip of the final loading from that meter, nor had I gone directly to the driver and told him that he is ready, or had I given him a slip, nor had I given a slip to the office to my knowledge. I still had several procedures to carry out, such as drain the hose from the platform, ascend the transport again in order to hook up the hose on the railing on the other side, descend onto the platform, descend from the platform to the bottom, remove the slip, and take it to the office whereby they will write it up and incidentally before I pulled, after I pulled that slip out of the meter I also had to calculate the number of gallons on there, verify it in my writing as well as sign it, then take it to the office where they in turn

would give him a duplicate, and I would give the okay to the driver to move on for the next truck. The last performance I did was the—when I first descend after filling the final compartment was when I first descend from the transport to the platform and weered (*sic*) about to go to the hose in order to drain it. That is when I received, as I turned about the first thing I received was a terrific slap from that hose."

Defendant Cutler testified that after he put his truck in position to be loaded from the facilities of the Roseline Oil Company he turned off the motor, set the hand brake, and went into the dispatcher's office, that while he was there plaintiff entered and handed to him the so-called meter tickets indicating the quantities of the different grades of gasoline that had been put into the tank. Thereupon the dispatcher filled out the invoice which was signed by defendant Cutler. The meter tickets and the invoice were stapled together and given to Mr. Cutler. Said papers were produced in court.

The following excerpt from the testimony of defendant Cutler sets forth his version of the material facts:

"*Q.* Okay. Now, going back to delivery of the 2 meter tickets and the invoice, after you had signed the invoice what happened next? You are in the office.

"*A.* Well, Mr. Scho told me the truck was loaded and ready to go. So we walked out to the truck together, and we got the door—

"*Q.* Did you have any conversation while you were walking out to the truck? Anything in general, or specific you remember? * * *

"*A.* Well, just as we got to the back of the truck, and I patted him on the back. I said, 'I'll see you'. He said. 'Okay. Take out'.

"*Q.* He said what?

"*A.* 'Okay. Take it out.'

"*Q.* What did you do?

"*A.* Went around to my truck, got in it.

"*Q.* Mr. Scho didn't walk to the truck door with you then?

"*A.* No. He went around to the right side. I went around to the left side, the driver's side.

"*Q.* You got into your truck. I presume you started it?

"*A.* Yes, sir.

"*Q.* All right. Take us from there. What did you do?

"*A.* I started it and took off the hand brake, put it in gear, started moving out then.

"*Q.* Now, have you ever had occasion in regard to starting it what lapse of time, what period of time it takes you to start that tractor, the motor in that tractor? Have you ever tested it, and if you have, when was it you tested it?

"*A.* Well, it's a G.M.C. as a rule is a harder starting tractor. And especially if the engine is warm as it was then. And it takes as long as a minute at times. Sometimes less. I would say a half minute to get the thing started, and—

"*Q.* In other words, about 30 seconds would be an average minimum time?

"*A.* Yes, sir. That would be starting out pretty good.

"*Q.* So, you started your tractor, released your brake, and then what did you do?

"*A.* I started leaving out, moving out from the rack (indicating).

"*Q.* Did you start a turn at all?

"*A.* Yes, sir. I turned to the left."

The witness further claimed that he had proceeded for approximately 10 feet when he heard someone calling. He immediately came to a stop and on investigation found plaintiff lying on the loading dock.

In view of the conflict in the testimony as to how the accident happened and particularly with reference to the starting of the truck, a jury question was

obviously presented. The verdict indicates that plaintiff's version of the occurrence was accepted, and that the jury found that he had not authorized the movement of the truck, as claimed on behalf of defendants. The determination of the issue was within the province of the jury. It may not be said that the verdict in plaintiff's favor was contrary to the great weight of the evidence. The statement of the general rule in *Werker* v. *McGrain,* 315 Mich 287, 291, is applicable here. It was there said:

"If there is substantial evidence tending to support the verdict it should not be set aside even though this Court might be in doubt as to the ultimate facts." See, also, *Day* v. *Troyer,* 341 Mich 189; *Bennett* v. *Hill,* 342 Mich 754.

The claim that the verdict was excessive is based wholly on the amount thereof. Counsel for appellants do not contend that anything occurred during the course of the trial of such nature as to create bias or prejudice on the part of the jurors. There is no showing that the verdict returned was obtained by improper methods. That plaintiff suffered a severe injury is not in dispute. His nose was broken in several places, his face was lacerated, his teeth loosened, and he also suffered a back sprain. He underwent surgical, medical, and hospital treatment. The proofs disclose that his nose is permanently deformed. There is no mathematical rule by which damages for such injuries can be determined. The amount allowed must rest in the sound judgment of the triers of the facts. *Watrous* v. *Conor,* 266 Mich 397; *Cleven* v. *Griffin,* 298 Mich 139; *Teeter* v. *Pugsley,* 319 Mich 508.

It was plaintiff's claim on the trial that as a result of the accident and the injuries sustained therein his earning capacity was very materially, and permanently, impaired. At the time of the trial in May,

1958, he was 47 years of age. At the time of the accident his earnings were approximately $100 per week. He testified that some weeks after the occurrence he sought to return to the employ of the Roseline Oil Company but was rejected because of his condition. He testified also that he was skilled as a watchmaker but because of his condition would be unable to engage in that occupation in the future. The record, however, fails to furnish any basis for a determination as to possible loss of earnings in the skilled vocation. If the condition claimed by him existed at the time of the trial, the members of the jury quite possibly observed the physical manifestations thereof. The converse is, of course, equally true. The jurors were entitled to give consideration to matters pertaining to the case that were subject to their observation during the course of the trial.

The only medical witness on the trial was the physician who treated plaintiff for his injuries. He testified that following the accident plaintiff was suffering from shock, that the bones of his nose were broken in several places, that he had lacerations on his face, and that he was emotionally upset. The witness also testified as to the treatment given for the various injuries and to alleviate some difficulty in breathing. The nervous condition of plaintiff was attributed to the accident, and classified by the witness as "traumatic nervousness", that it was manifested by excessive perspiring, rapidity of action, and inability to sit and talk quietly. The doctor expressed the opinion that the condition had subsided but indicated that it was difficult to say if it had subsided completely. He also stated that the difficulty in breathing would present a "continuous problem". It must be conceded that the medical proofs are not as definite and complete as is desirable in a case of this nature. In part, at least, the testimony of the medical witness is at variance with that of the plain-

tiff. It is a fair inference that the jury determined such variance in accordance with the statements of the plaintiff as to his then condition, possibly supplemented by observations made of the plaintiff while the trial was in progress.

It was the function of the jury to evaluate the testimony and to determine the issues in the case on the basis of the facts found to be established by the proofs. As before indicated, there is nothing in the record to suggest any occurrence during the trial that might have resulted in prejudice or bias insofar as the award of damages was concerned. Neither may it be said that the verdict was not supported by competent testimony. Under the situation presented to us we are not prepared to say that the verdict should be declared excessive and a new trial granted on that ground. *Hicks* v. *Gillespie,* 346 Mich 593; *McKay* v. *Hargis,* 351 Mich 409.

The judgment from which the appeal has been taken is affirmed, with costs to plaintiff.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.