FRENCH *v.* MITCHELL.

Decision of the Court.

1. Death—Remittitur—Equally Divided Court.

Judgment in action under death act, on verdict as reduced by re-
mittitur, is affirmed by a court equally divided between allow-
ance as reduced and entry of judgment on entire verdict (CL
1948, § 691.581 *et seq.*; GCR 1963, 527.6).

Separate Opinion for Reversal.

T. M. Kavanagh, C. J., and Souris, Smith and Adams, JJ.

2. Death—Distribution of Damages.

*Damages recoverable under the death act are distributable: (a)
damages for pecuniary injury to surviving spouse and next*

---

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 15] 22 Am Jur 2d, Death §§ 126–129.
[3] 23 Am Jur 2d, Descent and Distribution §§ 9, 10.
    19 Am Jur, Escheat § 2.
[4] 19 Am Jur, Escheat § 5.
    22 Am Jur 2d, Death § 28.
    Right of action for death, where deceased left no next of kin, or
    person within class of beneficiaries named in the statute creating
    the right of action. 117 ALR 953.
[5] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[6] 22 Am Jur 2d, Damages §§ 366, 367.
    4 Am Jur 2d, Appeal and Error § 245.
[7] 22 Am Jur 2d, Damages §§ 109, 366.
[8, 14] 5 Am Jur 2d, Appeal and Error § 836.
[9, 20, 23] 5 Am Jur 2d, Appeal and Error § 836.
    22 Am Jur 2d, Death § 176.
    Adequacy of damages for personal injuries resulting in death of
    adult (for years 1941 to 1950). 17 ALR2d 872.
[10, 12, 13] 22 Am Jur 2d, Death § 246.
[11] 5 Am Jur 2d, Appeal and Error § 836.
[16] 22 Am Jur 2d, Death § 12.
[17] 50 Am Jur, Statutes § 223.
[18, 19] 50 Am Jur, Statutes § 225 *et seq.*
[21] 5 Am Jur 2d, Appeal and Error § 1009.
[22] 22 Am Jur 2d, Damages §§ 366, 367.
[24] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

*of kin who were pecuniarily injured, (b) reasonable medical, hospital, funeral and burial expenses to the estate liable therefor, and (c) damages for pain and suffering to those entitled thereto according to the intestate laws (CL 1948, § 691.581 et seq.; §§ 702.80, 702.93).*

3. DESCENT AND DISTRIBUTION—PRIORITY OF HEIRS—ESCHEATS.

*Intestate laws provide for a priority of distribution among various heirs of the intestate, and conclude by providing that if there are no heirs, the property would escheat to the State (CL 1948, §§ 702.80, 702.93).*

4. DEATH—DAMAGES—PAIN AND SUFFERING—HEIRS.

*Proof of the existence of heirs of person for whose death an action was brought under the death act is not a prerequisite to the recovery of damages for pain and suffering, such damages being distributable to the State in the absence of other takers (CL 1948, § 691.581 et seq.).*

5. SAME—DAMAGES—PROPERTY—SAVING QUESTION FOR REVIEW.

*Instruction to jury permitting inclusion in jury's verdict in action for wrongful death of plaintiff's decedent of damages to decedent's car, although error, was not reversible, where defendant-appellant failed to make timely objection to the instruction and has not raised the point on appeal (CL 1948, §§ 691.581, 691.582; GCR 1963, 516.2).*

6. APPEAL AND ERROR—REMITTITUR—REINSTATEMENT OF ORIGINAL VERDICT.

*Conditional agreement to remittitur ordered by the trial judge does not preclude plaintiff from urging, and obtaining, reinstatement of the original verdict, where defendant has appealed from judgment on the reduced verdict (GCR 1963, 527.6).*

7. DAMAGES—PAIN AND SUFFERING—QUESTION FOR TRIER OF FACTS—COURTS.

*Substitution by a court of its evaluation of pain and suffering for that of the duly constituted trier of fact should only be made under extraordinary circumstances.*

8. SAME—PERSONAL INJURIES.

*The amount allowed in an action at law for personal injuries must rest in the sound judgment of the trier of the facts, except when the verdict has been secured by improper methods, sympathy, or prejudice.*

9. Appeal and Error—Damages—Remittitur—Reinstatement of Original Verdict.

> General verdict of $11,549.10 for administratrix of estate of decedent who had received fatal injuries in collision of automobiles, and lived some 9 hours thereafter consciously suffering from fractured ribs and a torn lung, held, not excessive in action under death act, there being no showing the verdict was secured by improper methods, sympathy, or prejudice, hence, it was error to order a $5,000 remittitur (CL 1948, § 691.581 et seq.; GCR 1963, 527.6).

10. Death—Reasonable Compensation—Pain and Suffering—Damages.

> An award of reasonable compensation to plaintiff for pain and suffering of the decedent in an action under the death act is, in legal contemplation, damages (CL 1948, § 691.581 et seq.).

11. Same—Reasonable Compensation—Pain and Suffering.

> The test of unreasonableness of a damage award, applied by the Supreme Court in a common-law action for pain and suffering, is determined by whether it was secured by improper methods, sympathy, or prejudice, and the same test is used in reviewing an award of reasonable compensation under the death act for conscious pain and suffering of the decedent (CL 1948, § 691.581 et seq.).

### Separate Opinion for Affirmance.
### Dethmers and Black, JJ.

12. Death—Pain and Suffering—Period of Consciousness.

> Recovery under the wrongful death act for pain and suffering of the decedent is of reasonable compensation therefor during period of decedent's consciousness between time of inflicting of the injuries and death (CL 1948, § 691.582).

13. Same — Pain and Suffering — Reasonable Compensation — Courts.

> Courts have the duty to see that compensation for pain and suffering recoverable under the wrongful death act is reasonable (CL 1948, § 691.582).

14. Same—Pain and Suffering—Remittitur—Lack of Survivors.

> Review by the Supreme Court of a jury's award under the wrongful death act which had been ordered remitted in part by the trial judge is limited to a determination of whether the trial judge committed reversible error in ordering remission of

*$5,000, half of the amount which jury had allowed for pain and suffering, where decedent survived the injuries 9 hours and left no one who may claim damages for loss of support, loss of consortium, or loss of companionship, the estate being beneficial only to the plaintiff fiduciary, attorneys therefor, and the State treasury (CL 1948, § 691.582).*

15. SAME—DAMAGES—RESTRICTIONS.

*A decedent's personal representative may recover upon proper pleading and proof in action under wrongful death act damages restricted (a) to the pecuniary injury resulting from such death, (b) to damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, and (c) to reasonable compensation for the pain and suffering, while conscious, undergone by the decedent (CL 1948, § 691-.582).*

16. SAME—REASONABLE COMPENSATION OF PLAINTIFF.

*The basic purpose of the wrongful death act is to reasonably compensate the plaintiff for the loss sustained rather than mulct the defendant (CL 1948, § 691.582).*

17. STATUTES—CONSTRUCTION.

*A statute is to be construed in accordance with what the legislature had in policy-mind when it legislated, not in what the Court has in policy-mind when it construes and applies the statute.*

18. SAME—EACH WORD HAS FORCE AND MEANING.

*It is assumed that every word employed in a statute has some force and meaning.*

19. SAME—USE OF DIFFERENT LANGUAGE.

*The use by the legislature of certain language in one instance and different language in another indicates that different results were intended.*

20. DEATH—PAIN AND SUFFERING—REMITTITUR.

*Remittitur of $5,000 in action under wrongful death act from verdict of twice that sum for pain and suffering during 9-hour interval between time injuries were inflicted and death of decedent, is affirmed, where trial judge determined award was excessive and must have been based either on a vindictive and punitive attitude toward defendant or on an intent to compensate for the value of a man's life, or·both (CL 1948, § 691.582).*

21. Costs—Death—Pain and Suffering—Remittitur.

No costs are allowed on appeal in action under the death act upon affirmance of verdict as reduced by trial judge, where principal question involved was whether trial judge had the power to order remittitur of part of verdict allowed for conscious pain and suffering (CL 1948, § 691.582).

SEPARATE OPINION FOR AFFIRMANCE.

O'HARA, J.

22. Appeal and Error—Remittitur—Discretion of Court.

To reverse an order of remittitur, it must be established that the trial court abused his discretion in entering it.

23. Death—Pain and Suffering—Remittitur—Discretion of Court.

Remittitur of $5,000 in action under wrongful death act from verdict of twice that sum for pain and suffering during 9-hour interval between time injuries were inflicted and death of decedent, is affirmed, where trial judge determined award was excessive and must have been based either on a vindictive and punitive attitude toward defendant or on an intent to compensate for the value of a man's life, or both, such order not being an abuse of discretion (CL 1948, § 691.582).

24. Costs—Death—Pain and Suffering—Remittitur—Neither Party Prevailing in Full.

No costs are allowed on plaintiff's appeal in action under the death act upon affirmance of verdict as reduced by remittitur as to amount allowed for pain and suffering, as neither party has prevailed in full.

Appeal from Van Buren; Anderson (David, Jr.), J. Submitted May 12, 1965. (Calendar No. 24, Docket No. 50,672.) Decided March 8, 1966.

Declaration by Wanda French, administratrix of the estate of Carl Caruthers, deceased, against Barbara Mitchell, Georgia Pumfrey, and Richard Pumfrey for the wrongful death of decedent arising out of an automobile accident. Verdict and judgment for plaintiff. Defendant Mitchell appeals. Affirmed by an equally divided court.

*James Thomas Sloan, Jr.* and *Jerry J. O'Connor,* for plaintiff.

*Seymour & Seymour (Dale A. Seymour,* of counsel), for defendant Mitchell.

SOURIS, J. *(for reversal).* Carl Caruthers died as the result of injuries received in a collision between his automobile and two others on February 12, 1961. Plaintiff, as administratrix of his estate, brought this action under the wrongful death act, CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27.711 *et seq.*),[1] against the operators and owners of the two automobiles with which Mr. Caruthers' automobile collided. At the conclusion of plaintiff's proofs, the case was dismissed as to defendants Georgia and Richard Pumfrey. The jury returned a verdict of $11,549.10 against defendant Mitchell. The trial judge denied defendant's motion for new trial upon condition that plaintiff agree to a remittitur to $6,549.10, the trial judge having concluded that $10,000 of the jury's verdict was for decedent's pain and suffering and that such award was excessive. Plaintiff so agreed, but defendant nonetheless took this appeal.

## I.

Upon appeal defendant argues that since plaintiff introduced no testimony that decedent left any heirs, plaintiff was entitled to recover *no* damages for decedent's pain and suffering. The pertinent statutory language read:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court

---

[1] See, currently, PA 1965, No 146, amending PA 1961, No 236, § 2922 (CLS 1961, § 600.2922 [Stat Ann 1965 Cum Supp § 27A-.2922]).

or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death: Provided, however, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the

intestate laws." CL 1948, § 691.582 (Stat Ann 1959 Cum Supp § 27.712).

It will be noted that the act provided for distribution of damages for pecuniary injury to those of the spouse and next of kin who were pecuniarily injured, and provided for payment of the reasonable medical, hospital, funeral and burial expenses for which the estate was liable. As to the remainder of the damages recovered, that is, damages for pain and suffering, such remainder was to be distributed "according to the intestate laws." The pertinent intestate laws provided a priority among various heirs with respect to inheritance of an intestate's property and concluded by providing that in the event there were no heirs, the property would escheat to the State. See CL 1948, § 702.80 (Stat Ann 1962 Rev § 27.3178[150]), and CL 1948, § 702.93 (Stat Ann 1962 Rev § 27.3178[163]).

Thus, the wrongful death act itself, as it read at all times pertinent herein, by reference to the laws relating to intestate succession, provided that damages recovered for pain and suffering be distributed to the State in the absence of other takers. This means, of course, as the trial judge properly held, that proof of the existence of heirs was not a prerequisite to recovery of such damages.

## II.

It should be noted, in passing, that the trial judge erred by instructing the jury that plaintiff might recover under the wrongful death act for damage done to decedent's automobile. The act made no provision for such recovery. The error will not result in reversal, however, since defendant failed timely to object to the instruction, as required by GCR 1963, 516.2, nor does defendant even now raise the issue on appeal.

III.

Although plaintiff agreed to the remittitur conditionally ordered by the trial judge, plaintiff urges upon this appeal taken by defendant that the original verdict be reinstated. This plaintiff has a right to do, GCR 1963, 527.6, and we agree that the verdict should be reinstated.

Deceased was conscious for about nine hours after the accident, in which he had suffered chest injuries, including fractured ribs and a torn lung. His breathing was labored, and because of the fractured ribs, according to medical testimony such breathing produced a pain, "sharp and knife-like, a cutting pain with the breathing." There was medical testimony that there was bleeding around the torn lung, which prevented the lung tissue from absorbing oxygen in quantities sufficient to sustain life. One doctor testified, "His death, probably, was a type of suffocation."

The jury returned a general verdict of $11,549.10, much the greater portion of which, under the instructions given the jury, and in view of the proofs presented by plaintiff, must have been awarded for pain and suffering of decedent. Only in extraordinary circumstances should this Court, or any court, substitute its evaluation of pain and suffering for that of the duly constituted trier of fact.

However, in his opinion ordering remittitur or new trial, the trial judge stated:

"While this Court is reluctant to substitute its judgment for that of the jurors, the conclusion is inescapable that the award of $10,000 for some nine hours of conscious pain and suffering as shown by the testimony is excessive and must have been based either on a vindictive and punitive attitude toward defendant or on an intent to compensate for the value of a man's life, or both."

Since there is nothing in the record to support either of the trial judge's explanations for the jury's verdict, his decision to reduce the amount of that verdict must have been based solely on *his* judgment that the amount awarded was excessive. In *Scho* v. *Socony Mobil Oil Company, Inc.* (1960), 360 Mich 353, 359, we said:

"The claim that the verdict was excessive is based wholly on the amount thereof. Counsel for appellants do not contend that anything occurred during the course of the trial of such nature as to create bias or prejudice on the part of the jurors. There is no showing that the verdict returned was obtained by improper methods. That plaintiff suffered a severe injury is not in dispute.   *   *   *   There is no mathematical rule by which damages for such injuries can be determined. The amount allowed must rest in the sound judgment of the triers of the facts."

There is no showing in this case of French that the verdict was secured by improper methods, sympathy, or prejudice. Thus, neither this Court nor the trial court can usurp the role of the fact finders in the case. The trial judge erred in ordering the remittitur.

Justice BLACK suggests that the *Scho Case* is an inapt citation for the proposition for which it has been cited—that under the wrongful death act a jury's award for conscious pain and suffering may be set aside only if such award were secured by improper methods, sympathy, or prejudice. Apparently his thesis is that a court has less restricted power to set aside a jury award of "reasonable compensation for [conscious] pain and suffering" in a wrongful death action than it has over a jury award of damages for conscious pain and suffering in a common-law action. He is wrong for at least two reasons.

First, this Court has made clear in its opinions that it regards the wrongful death act's "reasonable compensation" as falling within the general rubric of "damages", as is shown by the following cases, all involving the issue of awards for pain and suffering and all brought under the act. *Covell* v. *Colburn* (1944), 308 Mich 240, 243: "From the testimony there was no basis for a finding of damages because of pain and suffering"; *Baker* v. *Slack* (1948), 319 Mich 703, 707: "The statute under which this action is brought expressly permits damages for 'pain and suffering' "; *Weller* v. *Mancha* (1958), 353 Mich 189, 195, 196: "It is apparent that no consideration was given by the jury to the additional elements of the pain and suffering of the deceased and the future damages of the widow and minor child, and, therefore, the damages awarded to plaintiff were overwhelmingly against the evidence, and, under the evidence, grossly inadequate"; *Brown* v. *Oestman* (1961), 362 Mich 614, 618, 619: "Finally, defendant claims there was no evidence that decedent sustained any pain and suffering between the time he was first struck and the time he lost consciousness after the last blow and that, therefore, the jury should not have been permitted to award damages therefor. * * * Plaintiff's proofs were adequate in this respect." Thus it is evident that this Court has consistently made clear its understanding that the "reasonable compensation" referred to in the act is subsumed under the generic "damages".[2]

Second, to say that the statutory "reasonable compensation" for pain and suffering is substan-

---

[2] Justice BLACK, whose opinion herein prompted this discussion, recently wrote: "I would not even consider either the open or silential overrulement of a matured, unanimous, and long since accepted and applied judicial interpretation of a long standing statute, even though—according to my view—such interpretation was wrong from the beginning." *Mosier* v. *Carney* (1965), 376 Mich 532, 587 (dissenting opinion).

tively different from common-law "damages" for pain and suffering, in that a court may set aside awards of the former in circumstances where it could not set aside awards of the latter, is to say that awards for "damages" may be unreasonably high and yet a court have no power to' set them aside. This, of course, is not so. We test the unreasonableness of a "damage" award, as stated in *Scho, supra,* by determining whether it was secured by improper methods, sympathy, or prejudice; if such be the case, it may be set aside. This is the same test we use in reviewing an award of "reasonable compensation". This is as it should be, absent some reason why a jury verdict of compensation for conscious pain and suffering in a wrongful death action should be any more vulnerable to judicial tampering than would an identical jury award for damages for identical conscious pain and suffering in an action brought under the survival act,[3] for example.

The judgment entered below should be vacated and this cause should be remanded for entry of judgment in accordance with the jury's verdict. Plaintiff may tax her costs.

T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J. (*for affirmance*). The citation of *Scho v. Socony Mobil Oil Company, Inc.,* 360 Mich 353, upon allegation that the case supports a decision to uphold the amount of the jury's verdict as against the trial judge's remission thereof, is patently erroneous. The employment of *Scho* points up failure of Justice SOURIS to note that *Scho* was a *common-law action* to recover damages arising from *personal injuries and disability resulting in lost earning power;* whereas this is a statutorily-enabled action

---

[3] CLS 1961, § 600.2921 (Stat Ann 1962 Rev § 27A.2921).

to recover that "reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death" (see section 2 of the wrongful death statute, amended in quoted regard by PA 1939, No 297; CL 1948, § 691.582 [Stat Ann 1959 Cum Supp § 27.712], currently CLS 1961, § 600.2922 as amended by PA 1965, No 146 [Stat Ann 1965 Cum Supp § 27A-.2922]).

Upon review of *Scho* we were called upon to scrutinize, as against an allegation of excessiveness, a verdict and judgment in the sum of $50,000, rendered and entered upon the proof Justice Carr outlined in detail on pages 359, 360, and 361 of *Scho's* report. There is not a word in *Scho's* opinion having to do with our instant task, that is, judicial appraisal of an amount allowed by the jury as and for such statutorily limited "reasonable compensation." The legislature since 1939 has put it to the courts of Michigan that "reasonable compensation"[1] only be allowed in actions brought under the statute for "conscious pain and suffering." We cannot shirk our duty to control such *"compensation,"* to "reasonable" extent, without legislating another deletive amendment of this same statute in favor of still another plaintiff.

The plaintiff fiduciary can hardly claim that she is entitled to more than the statutory measure since her action was brought—had to be brought—under the very statute which limits the "compensation" sought by her. So our pin-pointed question is whether Judge Anderson committed reversible error when he ordered remission, from $10,000 to $5,000, of the amount allowed by the jury for conscious pain

---

[1] Not "damages" as employed earlier in section 2 of the statute with respect to "pecuniary injury" and out of pocket expenses "for which the estate is liable." See present discussion of Justice Souris' *subsummation* of these key words—"reasonable compensation."

and suffering. The circumstances of the case being what they are, and the legislature presumably having inserted the words "reasonable" and "compensation" in the authorizing statute for something more than an idle purpose, I would uphold the judge's order of remission as eliminating the punitive and allowing "reasonable compensation" only to the decedent's estate; an estate which on the factual face of this record will inure only to the plaintiff's counsel and the plaintiff fiduciary, both feewise, with what is left going to the State treasury.

This time there is no near or distant relative, happy or sad over the decedent's death, for whom the plaintiff fiduciary may claim *damages* for loss of support, loss of prospective consortium, loss of prospective companionship, loss of prospective solatium, loss of Christmas greetings in the future, or, as unbridled "extensions" of the statute are bred and inbred the more in our quarters, loss of some remotely possible windfall by descent or legacy.

Aside from these record facts, this Court is under independent duty to see that what juries allow (in today's death act context) is *compensation* only, and that such compensation is *reasonable.* The two restrictives were put into the statute for that purpose. To lay down a precedential standard that $900 to $1,000 per hour is statutorily permitted "reasonable compensation" for conscious pain and suffering, and then to say that the jury has the last word in regard to the *amount* of such compensation when no "improper methods" are made to appear, is to say that death act verdicts for such pain and suffering may— without judicial control—attain astral heights; heights above and beyond the amounts of liability coverage most car owners carry pursuant to the financial responsibility act.[2] Having laid down such

---

[2] $10,000 and $20,000. See CLS 1961, § 257.504 (Stat Ann 1960 Rev § 9.2204).

a standard, what will we do when another *Collins* v. *Hull,* 256 Mich 507,[3] comes up with a verdict and judgment of, say, $70,000, for four days' conscious pain and suffering? Will we apply this case of French with impotent hand-wringings, or sneak around French via the path of woolly words?

Carrying this allegation of judicial impotence to its ultimate fatuity, let us suppose that the wrongfully taken decedent, survived as here by no wife, kin or "companion," has lingered consciously for *three months* on a bed of pain. There being no "improper methods," would the Court have no power to test for reasonableness a verdict of $250,000? The Court had better answer this open question openly, just so the rest of us are warned beforehand to elevate (at what cost?) liability insurance limits beyond tens of thousands unto hundreds of thousands, and then are required to remain on the *qui vive* to make sure continuantly that the selected insurer is financially able and stays able to assure indemnity in this new sidereal area.

In a curiously worded answer to the above Justice SOURIS moves for a holding that the legislature, when it enacted the 1939 amendment of said section 2 and provided expressly therein for "reasonable compensation" only of conscious pain and suffering, just used those qualifying words for no purpose at all and that the Court should *subsume*[4] them "under the generic 'damages.' " Wheeled up and unlimbered, as and for support of the motion, are four cases: *Covell* v. *Colburn,* 308 Mich 240; *Baker* v. *Slack,* 319 Mich 703; *Weller* v. *Mancha,* 353 Mich 189; and *Brown* v. *Oestman,* 362 Mich 614. Let us look them

---

[3] In *Collins* v. *Hull* the decedent (p 511) "lived four days, during which she was conscious and suffered very great pain."

[4] What a convenient and elastically useful verb transitive! When the judicial design is that of removing abhorrent words from a statute, "subsume" is a delightfully imprecise way to gloss over an amendment of statutory language the judicial branch has decided to ordain.

over, *fully* rather than by selectively truncated quotation, to determine whether any one constitutes as much as a gnat's weight of precedent for this effort to read out of section 2 what the legislature chose to include therein.

*First:* In *Covell* the Court was asked only to find whether there was any evidence—any at all that is —of conscious pain and suffering. *The Court held there was no such evidence* (p 243). Hence there was no discussion, or occasion for discussion, of the question brought here and considered in these warring opinions.

*Second:* In *Baker,* again as in *Covell,* the question was whether there was *any* evidence of conscious pain and suffering within the statutory requirement. The Court held, flatly (p 707), that "There is no testimony that decedent was conscious after being struck." Then Justice DETHMERS, writing by reference to *In re Olney's Estate,* 309 Mich 65, went on to summarize what is so vinegary to our zealously liberal majority (p 711):

"It is difficult to imagine how this Court could have stated more explicitly that after the effective date of the 1939 act recovery may be had, even when the injured party survives his injuries for a time, only for pecuniary injury, as formerly compensable under the death act, plus compensation for conscious pain and suffering, when it exists, and for reasonable medical, hospital, funeral, and burial expenses, all as expressly provided in the 1939 act."

Then further (p 715):

"In the instant case, plaintiff failed to establish conscious pain and suffering by decedent, and inasmuch as the widowed decedent's next of kin, in the language of the *Olney Case,* 'had no legally enforceable claim to support or maintenance by decedent' and, consequently, suffered no pecuniary loss,

the only element of damages which was recoverable was the expense of decedent's funeral and burial, for which plaintiff claimed and defendant conceded that plaintiff was entitled to have judgment for $190."

Vinegary? Why, yes. See *Currie* v. *Fiting*, 375 Mich 440; *Heider* v. *Michigan Sugar Company*, 375 Mich 490; and *Reisig* v. *Klusendorf*, 375 Mich 519, and even more recent *Wilson* v. *Modern Mobile Homes, Inc.*, 376 Mich 342. The latter, by the way, is the death act case in which our majority blessed fully, as free from error, a jury charge that (p 358) "There can be no recovery to the plaintiff beyond the time that the deceased would have reached the age of 21 years."[5]

I thought, until now, that the Court's majority in the last cited cases had overruled *Baker* v. *Slack*. Now though, it looks like the case has come to a temporary resurrection by its detractors; just for the purposes of this French Case of course.

*Third:* In *Weller* the jury allowed nothing "for pain and suffering and nothing for loss of support." (p 195.) We held accordingly that the verdict, "for the exact amount of the stipulated special damages of the deceased," was "grossly inadequate." (A pretty fair recognition, I would say, of the prerogative of *judicial* control over the amount of the *jury's* verdict—in a wrongful death case—where the amount reported is distasteful to the *plaintiff*, rather than to the *defendant*.)

*Fourth:* In *Brown* the same question was presented as in *Covell* above. We were simply called upon to examine the proof for legal sufficiency as proving conscious pain and suffering under the statute. Here is our holding—all of it (p 619):

---

[5] This, to be sure, will have to be corrected—hastily—by our said majority. Since October 4th it has cast the plaintiff's bar—blissful since *Currie* and *Reisig*—into a bed of worrisome discomfort.

"In order to establish the fact of pain and suffering by decedent, it is sufficient to prove that blows were struck, blood flowed therefrom and that decedent was conscious thereafter. See *Hanna* v. *McClave,* 273 Mich 571. We do not consider evidence of an exclamation of pain or expert testimony that pain would result from such blows essential to plaintiff's right to recover for his decedent's pain and suffering. Plaintiff's proofs were adequate in this respect."

Yes, these are the cases Justice SOURIS and his devotees proffer as *precedent* for holding "that the 'reasonable compensation' referred to in the act [wrongful death act] is subsumed under the generic 'damages'"; for holding that when the legislature qualified the amount of recovery allowable in cases as at bar, by employing the words "reasonable compensation," it was just inserting a purposeless adjective and a purposeless noun in an epochal statute, and that the Court now should order the subsummation of the two. Rather a novel way, at that, to amend a statute by judicial fiat. Just "subsume" the parts of it the Court doesn't like.

The best way to expose arrant error is to disrobe it, unceremoniously as above. The bared fact is that, *in no cause arising since the amendment of 1939 became effective, has this Court been called upon to decide today's issue or anything remotely kin thereto.* That issue is whether a verdict reported *solely* as "reasonable compensation for pain and suffering, while conscious, undergone by such deceased person" between tort and death, is beyond *judicial control* when the *amount* of the verdict, to the trial judge or to the reviewing Court, appears unreasonably too high or unreasonably too low.

The stated question not having been raised or considered previously, and the statutory modifier—"reasonable compensation"—being distinctive as

well as absent from the remaining provisions for "damages" as such appear in the statute, and the modifier having been repeated and retained verbatim in the 1965 amendment (PA 1965, No 146, amending PA 1961, No 236, § 2922 [CLS 1961, § 600-.2922 (Stat Ann 1965 Cum Supp § 27A.2922)]), the statute alone stands forth as our governing guide. I suggest that we say so, without equivocation.

Judge Anderson did not err. He was empowered by the statute to determine whether the compensatory award was "reasonable" in amount, and to reduce that award as "unreasonable" in view of what was shown in evidence before him and the jury. True, such an order (whether for remittitur or additur) is reviewable as provided in GCR 1963, 527.6. But the trial judge's *power* under the wrongful death statute to remit or add, "improper methods" or no, has never been questioned until now.

The design of today's motion to reverse is pretty clear. It is born of the probably sincere but wholly errant belief that death act wrongdoers should be *punished* on authority of the wrongful death statute, just as Justices Souris, T. M. Kavanagh, Smith, and Adams concluded, back in 1962, when *Burns* v. *Van Laan,* 367 Mich 485 divided the Court equally. The final two sentences of the opinion signed by the four, in *Burns,* read as follows (p 503):

"I would let the financial burden rest upon him who causes provable loss to fully effectuate a permissible policy of the legislature to preserve human life 'by making homicide expensive'. *Western & Atlantic R. Co.* v. *Michael* (1932), 175 Ga 1, 13 (165 SE 37, 42)."

There is no such "permissible policy of the legislature" in Michigan. But a *judicial* policy of mulct the defendant, rather than "reasonably compensate"

the plaintiff, seems to be the temper of our judicial times so far as concerns the wrongful death statute.

No doubt remains today, in the mind of any knowledgeable Michigan lawyer, that the Brethren standing for present reversal have come to belief that the principle of legislative purpose and intent is passé. The Court, unanimous a bare 7 months ago, continued to hold to the firmly established rule that what the legislature had in policy-mind when it legislated, not what the Court has in policy-mind when it construes and applies, is controlling upon the judiciary (*Husted* v. *Consumers Power Company*, 376 Mich 41, 54).[6] So it is time to ask, pointedly: Just what legislative assembly intended that the statutory words "reasonable compensation" should be judicially ignored? Was it the assembly of 1939, or was it the assembly of 1965? Which assembly expected that the judicial branch would "subsume" those words? Why were the two words inserted in the statute at all, if not to limit as well as assure, by judicial action, "reasonable compensation" for conscious pain and suffering? Again, as in *Currie*, there will be no answer to these questions.[7]

---

[6] As the citations appearing in *Husted* show, this eminently sensible rule goes back to *Platt* v. *Union Pacific R. Co.*, 99 US 48 (25 L ed 424). There the Court prefaced its discussion by saying that "There is always a tendency to construe statutes in the light in which they appear when the construction is given." Then came the indicated epigram (p 64):

"But in endeavoring to ascertain what the Congress of 1862 intended, we must, as far as possible, place ourselves in the light that Congress enjoyed, look at things as they appeared to it, and discover its purpose from the language used in connection with the attending circumstances."

Why not, for this case of French, endeavor to ascertain what the legislature of 1939 intended?

[7] In *Currie, supra,* at p 465, these questions—arising under the wrongful death statute—went unanswered:

"Just what legislative assembly intended that the enacted, re-enacted, generations-known, and currently effective composite, 'pecuniary injury resulting from such death,' should include and permit recovery of damages—of any nature whatever—on behalf of non-dependent parents of a noncontributing adult child? Was it the con-

Some of us, taught to respect the teachings of our nationally acclaimed juristic forefathers, believe that this Court should suppose that "every word employed in a statute has some force and meaning, and was made use of for some purpose."[8]  We have been taught, both as lawyers and judges, that when the judiciary is called upon to apply a statute the Court will presume that the legislature has inserted every word and every sentence therein for a reason and has intended that every part thereof should be carried into effect (*Attorney General, ex rel. Zacharis,* v. *Board of Education of City of Detroit,* 154 Mich 584; followed to the point in *Wyandotte Savings Bank* v. *State Banking Commissioner,* 347 Mich 33, 44); also that, when the legislature has used certain language in one instance and different language in another, the indication is that different results were intended (50 Am Jur, Statutes, § 274, p 261, "Varying expressions").

I suppose, though, that all this is just "old law"; that the Court in applying a statute should look, not

---

vocation of 1848?  If so, where is the evidence of such 1848 intent?  Or was it the assembly of 1873?  Why, as to that assembly?  Or was such intention evinced when the legislature amended the death act in 1939 and, at the same time, inserted said section 115 in the probate code?  If so, where is the evidence of 1939 intent to authorize such recovery?"

[8] The occasion for employment of these incisive words arose in *Potter* v. *Safford,* 50 Mich 46, 48.  The action was trespass to land with the defense relying upon statute (CL 1871, § 1268) and proof of user to establish the existence of a public way.  The modifying words "laid out," like the present modifier "reasonable compensation," appeared in the statute with one party contending they didn't mean anything in the context of the presented issue and the other contending the opposite.  Here is the full text of Justice Cooley's application of the principle of statutory construction to which I refer (p 48):

"We must suppose every word employed in a statute has some force and meaning, and was made use of for some purpose.  The words 'laid out' in this statute have therefore some office to perform.  They are meaningless if they are taken in the strict legal sense, for then the user is made unimportant.  We must therefore assume that they are meant to apply to those cases in which there has been a laying out of a highway not in strict conformity to the law so that the user becomes important to perfect it."

to the legislative purpose as of enactment but to the personal judicial desire as same happens to stand at the time of decision. To accomplish this it is proposed that we "subsume" as *non grata* two legislatively employed words. "Consume" would, I suggest, be a more accurate term since that really is what must be done, to "reasonable compensation," as a condition of reversal of Judge Anderson's judgment.

In a way, it is a good thing that this case of French has come to appeal. The amount at issue—$5,000— means little either way. If the circuit court's judgment is reversed, doubtless some obnoxious insurance company will pay the full amount of the verdict. If the judgment is sustained, it will simply pay $5,000 less. The result itself will mean only that another plaintiff will—or will not—get another round pound of judicially carved, rather than legislatively provided, monetary flesh. But the precedent will be of concern as well as interest for all lawyers whose business it is to appraise for settlement, and prosecute or defend, claims and actions arising under our progressively mutilated wrongful death statute.

Our record of this case would not be complete without full quotation of Judge Anderson's reasons for reduction of the jury's verdict. Here is such quotation:

"The real question in this case is whether the jury's award for pain and suffering was excessive. Such an award will not be disturbed unless the amount thereof is so excessive as to shock the conscience of the court.

"The testimony established that deceased lived approximately nine hours after the accident and that during that time he was conscious. The testimony established that death was caused by bleeding in the lung cavity resulting, in effect, in death by drowning.

"The evidence of actual suffering by deceased was not voluminous. It showed that deceased suffered some pain and discomfort. Actually, it appears that deceased's injuries were not considered very serious and his death came as a surprise. There was no testimony of great agony, and the hospital records indicate that deceased was fairly comfortable on his right side. He was, apparently, unconscious for the hour or so immediately preceding his death.

"It is to be noted that plaintiff's declaration as originally filed sought damages for pain and suffering in the amount of $9,450.90, a sum arrived at by adding together the other claims for damages and subtracting the total from the total *ad damnum* of $50,000, and that this claim stood until the proofs were in and plaintiff's claim of pecuniary loss to the alleged surviving widow was withdrawn. It is difficult for this court to understand how the withdrawal of the claim on behalf of the widow could increase the pain and suffering of a man already deceased.

"While this court is reluctant to substitute its judgment for that of the jurors, the conclusion is inescapable that the award of $10,000 for some nine hours of conscious pain and suffering as shown by the testimony is excessive and must have been based either on a vindictive and punitive attitude toward defendant or on an intent to compensate for the value of a man's life, or both."[9]

I would affirm, without an award of costs.

DETHMERS, J., concurred with BLACK, J.

KELLY, J., concurred in result.

---

[9] One reading Judge Anderson's opinion is led to wonder what would happen in this Court had the verdict and judgment, for conscious pain and suffering, been rendered and entered in the sum of $100, rather than the sum of $10,000, with the plaintiff—not the defendant-appellant—complaining on appeal. Would "reasonable compensation" then be regarded as "subsumed"? Don't ask and answer that one, Mr. Lawyer, except in the safe privacy of your offices.

O'HARA, J. (*for affirmance*).   I am unable to sign Mr. Justice BLACK's opinion, although I agree with the result he reaches.

I deeply regret the necessity of writing separately but I do not believe in the practice of "concurring in result" in judicial opinions.   In so doing, I do not see how the trial bench or the bar can tell what the concurring Justice rejects or accepts in an opinion.

I disagree with this statement of Mr. Justice SOURIS:

"There is no showing in this case of French that the verdict was secured by improper methods, sympathy, or prejudice.   Thus, neither this Court nor the trial court can usurp the role of the fact finders in the case.   The trial judge erred in ordering the remittitur."

The foregoing, in my view, is not the test to be applied.

The established and settled rule in this State is:

"*To reverse the order [of remittitur] made, we must find that the trial court abused his discretion in entering it.   \* \* \*   It is true,   \* \* \*   the law furnishes no legal rule for measuring damages.   The amount to be awarded rests largely in the discretion of the jury.   The verdict should not be set aside merely because it is a large one, or because the court would have awarded less.*" *McLean* v. *American Railway Express Co.*, 243 Mich 113, 115, 116. (Emphasis supplied.)

Judge Anderson set forth in detail his reasons for exercising his discretion.   Those reasons are included in Mr. Justice BLACK's opinion and need not be restated here.   I am unable to find any abuse of discretion in this case.

I would affirm the judgment on remittitur of $6,-549.10.   I would award no costs in this Court, neither party having prevailed in full.