NORTHVILLE COACH LINE, INC., *v.* CITY OF DETROIT.

DECISION OF THE COURT.

1. CARRIERS—MUNICIPAL CORPORATIONS—INJUNCTION.
   Judgment of Court of Appeals granting injunctive relief to private bus line operator against defendant city, owner of bus line which had not obtained a certificate of public convenience and necessity to serve suburb in which plaintiff operated, is affirmed by DETHMERS, C. J., and KELLY and ADAMS, JJ., for failure to comply with motor carrier act; and by O'HARA, J., for lack of authority to operate in noncontiguous suburbs (Const 1963, art 7, § 24; CLS 1961, § 117.4f; PA 1933, No 254, as amended).

SEPARATE OPINION.

DETHMERS, C. J., and KELLY and ADAMS, JJ.

2. CARRIERS—MUNICIPAL CORPORATIONS.
   *Defendant municipally owned transportation system in operating its buses is a common motor carrier of passengers and is subject to the rules of law applicable to such carriers.*

3. SAME—MOTOR CARRIER ACT—REGULATION.
   *The motor carrier act governs the issuance of permits to motor vehicle carriers for hire, confers new powers upon the public*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 10] 13 Am Jur 2d, Carriers § 75 *et seq.*
[2, 11, 24–27, 33, 35, 37] 38 Am Jur, Municipal Corporations § 555; 37 Am Jur, Motor Transportation §§ 24–31.
[4, 5, 28–30, 38] 37 and 38 Am Jur, Municipal Corporations §§ 114, 115, 609.
[6] 50 Am Jur, Statutes §§ 223, 224.
[7, 9, 31, 32] 50 Am Jur, Statutes § 431 *et seq.*
[8] 50 Am Jur, Statutes § 384 *et seq.*
[12–14] 50 Am Jur, Statutes § 438.
[15–21] 50 Am Jur, Statutes § 518 *et seq.*
[22, 34, 40] 5 Am Jur 2d, Appeal and Error § 1009.
[23, 36] 37 Am Jur, Municipal Corporations § 102 *et seq.*
[39] 50 Am Jur, Statutes § 294 *et seq.*

*service commission and defines those powers, and provides for regulations for motor vehicle carriers for hire upon the public highways, whether such carriers are public or private carriers (PA 1933, No 254, as amended).*

4. MUNICIPAL CORPORATIONS—COMMON CARRIER—PROPRIETARY FUNCTION.

*A city is engaged in a proprietary function when it operates a common carrier of passengers for hire.*

5. SAME—PROPRIETARY OR GOVERNMENTAL FUNCTION.

*The facts and circumstances of each case determine whether a city is engaged in a proprietary or governmental function.*

6. STATUTES—CONSTRUCTION—INTENT.

*The Supreme Court in construction of a statute is required to discover the legislative intent and, if the language is ambiguous, a reasonable construction must be given, looking to the purpose sought to be served by the statute.*

7. SAME—CONSTRUCTION—EXEMPTIONS.

*Generally exemptions are carefully scrutinized and not extended beyond their plain meaning when construing a statute.*

8. SAME—CONSTRUCTION—PURPOSE—STRICT LETTER.

*Effectuation of the purpose of a statute should, if possible, prevail over its strict letter when construing the statute.*

9. SAME—CONSTRUCTION—GENERAL INTENT—EXEMPTIONS.

*The general intent of the act as a whole must be considered and especially the intent of a section listing exemptions from application when construing the statute.*

10. SAME—MOTOR CARRIER ACT—INTENT.

*The motor carrier act was enacted to grant the public service commission, and not the common motor carrier of passengers for hire, the right to decide what public service was adequate and proper (PA 1933, No 254, as amended).*

11. MUNICIPAL CORPORATIONS—TRANSPORTATION SYSTEM—COMMON MOTOR CARRIER OF PASSENGERS—STATUTE.

*The operations by defendant municipally owned transportation system as a common motor carrier of passengers for hire outside the corporate limits of the city owner were subject to the provisions of the motor carrier act (PA 1933, No 254, as amended).*

12. STATUTES—CONSTRUCTION—ANTECEDENTS.

Qualifying and relating words of a statute must ordinarily be referred to the next antecedent, where the intent does not appear to the contrary.

13. WORDS AND PHRASES—ANTECEDENTS.

The last antecedent is the last word which can be made an antecedent, without impairing the meaning of the sentence.

14. STATUTES—CONSTRUCTION—ANTECEDENTS.

Generally in statutory as well as in grammatical construction, a modifying clause is confined to the last antecedent, unless there is something in the subject matter or dominant purpose which requires a different interpretation.

15. SAME—IMPLIED REPEAL.

Repeal of a statute by implication is not favored.

16. SAME—IMPLIED REPEAL—INTENT.

Whether or not there has been an implied repeal of a statute in a given instance rests on the legislative intent.

17. SAME—REPEAL—INTENT—PUBLIC SERVICE COMMISSION ACT.

Had it been the intent of the legislature by the public service commission act to repeal the provisions of the motor carrier act, such intent would have been made manifest in clear and unmistakable language (PA 1933, No 254; PA 1939, No 3).

18. SAME—LEGISLATURE'S INTENT—MOTOR CARRIER ACT.

It was the legislature's intent to include municipally owned carriers under the regulatory provisions of the motor carrier act, and no legislative intention was manifested to exempt such carriers and repeal any part of the motor carrier act by the enactment of the public service commission act (PA 1933, No 254; PA 1939, No 3).

19. SAME—PUBLIC SERVICE COMMISSION ACT—TITLE—INTENT.

The title and a section of the public service commission act make it clear that the legislature did not thereby intend to repeal any of the pre-existing jurisdiction exercised by the public utilities commission, which included jurisdiction and authority to regulate common motor carriers (PA 1933, No 254; PA 1939, No 3, § 4).

20. SAME—CONSTRUCTION—REPEAL.

An act will not be construed to repeal or modify earlier legislation if, given such effect to the act, an apparent purpose would appear to disturb an established system of written law, covering a vital field in our system of government.

21. Municipal Corporations—Common Motor Carriers—Public Service Commission Act.

*The operations by defendant municipally owned transportation system as a common motor carrier of passengers are not exempted from the motor carrier act by provisions of the public service commission act.*

22. Costs—Public Question—Municipal Corporations—Transportation System.

*No costs are awarded in appeal from action to enjoin extension of service of municipally owned transportation system beyond the limits of the city, a public question being involved.*

Separate Opinion.

O'Hara, J.

23. Municipal Corporations—Home-Rule City—Motor Carriers—Public Service Commission.

*A common carrier transportation system, owned by a home-rule city, is not subject to the jurisdiction of the public service commission and city need not seek commission approval for action, but pertinent provisions of home-rule act do not authorize city's operation of such a system in suburbs within 10 miles from city limits that are not contiguous to the city (Const 1963, art 7, § 24; CLS 1961, § 117.4f).*

Dissenting Opinion.

T. M. Kavanagh and Souris, JJ.

24. Carriers—Statutes—Home-Rule Cities.

*A home-rule city owning and operating passenger transportation facilities within or outside of its corporate limits is not subject to the provisions of the motor carrier act, nor is it subject to the jurisdiction of the public service commission (PA 1933, No 254, as amended).*

25. Words and Phrases—Adjacent and Adjoining.

*Adjacent does not necessarily mean "bordering upon," but in context may mean "nearby."*

26. Municipal Corporations — Carriers — Statutes — Words and Phrases.

*The home-rule act enabling a city to adopt a charter by which it can own and operate transportation facilities within its limits and its adjacent and adjoining suburbs within 10 miles from its corporate limits gives a city the right to operate such fa-*

*cilities into suburbs whose boundaries are not identical with that of the city, the word* adjacent, *in context being construed to mean "nearby, but not bordering upon" (CLS 1961, § 117.4f).*

27. SAME—STATUTES—PUBLIC SERVICE COMMISSION—MOTOR CARRIER ACT.

*The motor carrier act exempts municipally-owned vehicles for governmental purposes, and a city operating passenger transportation facilities beyond its corporate limits under provisions of its charter, is not subject to the jurisdiction and control of the public service commission (CLS 1961, § 479.2, subd [c]).*

28. CARRIERS—MUNICIPAL CORPORATIONS—GOVERNMENTAL PURPOSE.

*Operation of a passenger transportation system by a municipality is the performance of a governmental purpose and vehicles owned by the municipality are being used for a governmental purpose, irrespective of the fact that they may be engaged in a proprietary function, in the light of tort liability decisions.*

29. MUNICIPAL CORPORATIONS—PUBLIC PURPOSE.

*A function of government which has been designated as proprietary in cases involving and determining tort liability of a municipal corporation does not necessarily imply that it is not performed for a public purpose.*

30. SAME—CARRIERS—STATUTES.

*A municipally owned bus line transporting passengers to and from nearby suburbs is performing a governmental purpose within the meaning of the term as used in the motor carrier act (PA 1933, No 254, as amended).*

31. STATUTES—CONSTRUCTION—EXCEPTIONS—PUBLIC SERVICE COMMISSION.

*Statute vesting in public service commission jurisdiction over "all public utilities in the State except any* municipally owned utility and except as otherwise restricted by law" *created 2 exceptions, one presently existing and the other left for future legislative determination (CL 1948, § 460.6).*

32. SAME—CONSTRUCTION OF SUCCESSIVE EXCEPTIONS.

*Provision of public service commission act, vesting it with jurisdiction over utilities "except any municipally owned utility," is not construed as being modified by immediately following provision "and except as otherwise restricted by law," but rather as providing an additional exception that is left for future legislative determination (CL 1948, § 460.6).*

33. Municipal Corporations—Carriers—Suburbs—Public Service Commission.

> A municipally owned bus line may transport passengers to and from noncontiguous suburbs within 10 miles of boundaries of owner municipal corporation, since it is not subject to the motor carrier act nor otherwise subject to the jurisdiction of the public service commission (CLS 1961, §§ 117.4f, 479.2; CL 1948, § 460.6).

34. Costs—Public Question—Municipally Owned Bus Lines—Suburbs.

> No costs are allowed in suit to enjoin operation of municipally owned bus line in adjacent suburbs also served by a privately owned bus company, public questions being involved (CLS 1961, §§ 117.4f, 479.2; CL 1948, § 460.6).

### Dissenting Opinion.
### Black, J.

35. Carriers—Motor Carrier Act—Regulation.

> Operation of municipally owned transportation system, carrying passengers, for hire outside of corporate limits, is subject to the provisions of the motor carrier act (PA 1933, No 254, as amended).

36. Municipal Corporations — Constitutional Law — Charters — Statutes.

> The constitutional right given a municipality to provide, in its charter, all things authorized by the home-rule act is made expressly subject to limits prescribed by law, and a municipality's charter right to operate transportation lines outside its corporate boundaries is qualified by conditions imposed by statute regulating common carriers (Const 1963, art 7, § 24; CLS 1961, § 117.4f; PA 1933, No 254, as amended).

37. Same—Carriers—Extraterritorial Operation.

> A city operating transportation lines outside the municipality is not exempt from the jurisdiction of the public service commission and can lawfully operate only after having applied for and obtained certificate of public convenience and necessity (PA 1939, No 254, as amended).

38. Statutes—Municipal Corporations.

> The exemption in the motor carrier act of municipally owned vehicles "for governmental purposes" does not grant a city the right to operate transportation lines outside of its corporate

*limits free of statutory regulation, as it would then be engaged in a proprietary rather than a governmental function (CLS 1961, § 479.2, subd [c]).*

39. SAME—CONSTRUCTION—WORDS AND PHRASES.
*Statutes should be construed in the light of the circumstances surrounding their enactment and full meaning should be given to the specific words of enactment as those words were used at that time.*

40. COSTS—MUNICIPALLY OWNED BUS LINES—SUBURBS.
*No costs are allowed in suit to enjoin operation of municipally owned bus line in adjacent suburbs also served by a privately owned bus company, where owner municipality had not obtained a certificate of public convenience and necessity (CLS 1961, §§ 117.4f, 479.2; CL 1948, § 476.1).*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., J. H. Gillis, and Fitzgerald, JJ., reversing Wayne, Fitzgerald (Neal), J. Submitted December 7, 1966. (Calendar No. 21, Docket No. 51,464.) Decided June 6, 1967. Rehearing denied July 21, 1967.

2 Mich App 591, affirmed.

Complaint by Northville Coach Line, Inc., a Michigan corporation, against the City of Detroit, Department of Street Railways, seeking to enjoin defendant from extending bus service into Livonia on Seven Mile road. Michigan Motor Bus Association, a Michigan corporation, intervened as a party plaintiff. Judgment for defendant. Plaintiff and intervenor plaintiff appealed. Judgment reversed by Court of Appeals. Defendant appeals and plaintiffs cross-appeal. Affirmed and remanded.

*Samuel W. Leib (Leib & Leib, of counsel), for plaintiff.*

*Edmund M. Brady and John M. Veale, for intervenor.*

*Robert Reese,* Corporation Counsel, and *Manuel Zechman,* General Counsel, Department of Street Railways of the City of Detroit, for defendant.

*Amici Curiae:*
City of Livonia, by *Steve Polgar,* City Attorney.

City of Plymouth, by *Thomas H. Healy, Jr.,* City Attorney.

City of Westland, by *John J. Nellis,* City Attorney.

KELLY, J. Plaintiff filed its complaint on August 13, 1964, in the Wayne circuit court, seeking an injunction restraining the city of Detroit and its Department of Street Railways from transporting passengers for hire from the Detroit city limits to the city of Livonia. The trial court granted Michigan Motor Bus Association's motion for leave to intervene.

Defendant moved for the entry of an accelerated judgment as a matter of law. In passing on this motion, the trial court denied plaintiffs' request for injunctive relief on two grounds: First, that the home rule act[1] authorized the city of Detroit so to operate, and second, that such operations were exempt from the provisions of the motor carrier act.[2]

In a split decision the Court of Appeals (2 Mich App 591) disagreed with the trial court's interpretation of the home rule act and held that the act limited the DSR operations to suburbs which are

---

[1] PA 1909, No 279 as amended (CL 1948 and CLS 1961, § 117.1 *et seq.,* as amended [Stat Ann 1949 Rev and Stat Ann 1963 Cum Supp § 5.2071 *et seq.*]).

[2] PA 1933, No 254 (CL 1948 and CLS 1961, § 475.1 *et seq.,* as amended [Stat Ann and Stat Ann 1965 Cum Supp § 22.531 *et seq.*]).

contiguous and bordering on the city of Detroit. Defendant appeals from that ruling. The Court of Appeals agreed with defendant that the DSR need not comply with the motor carrier act and plaintiffs cross-appeal.

## QUESTION No. 1.

"Are the motor carrier operations of Detroit's municipally owned transportation system beyond the city limits confined to municipalities and areas having common boundaries with the city of Detroit?"

This question involving interpretation of the home rule act calls for judicial determination of legislative intent as expressed in section 4f, subdivisions (2) and (3) of that act, which provide:

"Each city may in its charter provide    *  *  * for    *  *  *    operating transportation facilities within    *  *  *    its adjacent and adjoining suburbs within a distance of 10 miles from any portion of its city limits."

"Each city may in its charter provide    *  *  * for the operation of transportation lines without the municipality and within 10 miles from its corporate limits."[3]

The opinions found in 2 Mich App 591–598 explain how two members of the Court of Appeals interpreted the act differently than the trial judge and one member of the Court of Appeals.

After carefully considering these judicial interpretations and the able briefs and oral arguments of opposing parties, we conclude that the home rule act permits and authorizes the DSR to extend its transportation system 10 miles beyond the Detroit city limits.

---

[3] CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079).

QUESTION No. 2.

"Are the operations by the DSR as a common motor carrier of passengers for hire outside the corporate limits of the city of Detroit subject to the provisions of the Michigan motor carrier act?"

This Court's determination of legislative intent as expressed in the following two sections of the act will provide the answer to this question.

CL 1948, § 476.1 (Stat Ann § 22.534) provides:

"No common motor carrier of passengers * * * shall operate any motor vehicle for the transportation of * * * persons * * * for hire on any public highway in this State except in accordance with the provisions of this act. It shall be unlawful for any common motor carrier of passengers * * * to operate upon any public highway without first having obtained from the commission a certificate of public convenience and necessity."

CLS 1961, § 479.2 (Stat Ann 1965 Cum Supp § 22.567) [the pertinent exemption section] is as follows:

"This act shall not apply to: * * *
"(c) Vehicles owned or operated by any incorporated city, village or school district, or by any county or township in the State or by any corporation, agency or instrumentality of the same, *for governmental purposes.*" (Emphasis ours.)

Referring to the exemption words "for governmental purposes," plaintiffs state:

"It is appellants' position that in operating its motor coaches as a common carrier of passengers for hire beyond the limits of the city of Detroit, the DSR is engaged in a proprietary function, not a governmental function. * * * No case decided

by this Court holds that operation of a bus line in communities outside its corporate limits constitutes the performance by a municipality of a municipal operation 'for governmental purposes.' "

and claim that exempting the DSR from the provision of the act "would introduce chaos into what has been an orderly area of business activity fairly responsive to any public need. The DSR would be permitted to institute and discontinue service at will whenever its fancy suited, charge whatever rates it decided to fix, operate any kind of equipment, and as few schedules as it desired. The only test would be its own self interest."

Defendant explains its interpretation of the exemption provision by stating:

"Exempting municipally owned and operated transportation systems from the jurisdiction of the Michigan public service commission and from the operation of the 'motor carrier act' and thus permitting expansions of their operations as new neighborhoods and areas develop in the surrounding communities, has been and is a legislative device of encouraging and authorizing municipally owned public utilities furnishing motor coach passenger services to become an integral part of the entire metropolitan area."

Michigan Motor Bus Association's motion for leave to intervene emphasized the far-reaching effect of this decision by stating:

"Members of the petitioning association operate over and between various routes both within and without municipal boundaries through the State of Michigan. A determination in the instant proceeding will be applicable both insofar as the operations of petitioner's members throughout the State of Michigan operations are concerned, as well as to the operations of motor vehicles in the transporta-

tion of passengers for hire by all municipalities throughout the State similarly situated to defendant."

In *Frederick* v. *City of Detroit*, 370 Mich 425, we stated that defendant in operating its buses is a common motor carrier of passengers and subject to the rules of law applicable to such carriers.

We considered the motor carrier act in *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Commission*, 287 Mich 488 (28 PUR NS 455), and there said (p 491):

"PA 1933, No 254, is the only act now in force governing the issuance of permits to motor vehicle carriers for hire. This statute was a consolidation of previous acts, it covered the entire field, it was an original and independent act. It conferred new powers upon the Michigan public utilities commission, defined those powers, and provided for new regulations for motor vehicle carriers for hire upon the public highways, *whether such carriers were public or private carriers.*" (Emphasis ours.)

In *Borski* v. *City of Wakefield*, 239 Mich 656, we decided whether a city was liable in a tort action, and held that, when a city operates a common carrier of passengers for hire, it is engaged in a proprietary function.

The trial court disagreed with plaintiffs' contention that *Borski* should be considered as the controlling precedent. The trial judge stated that, although he was aware of the "oft-quoted distinction between the governmental and proprietary functions and operations of a municipality," yet he disagreed with plaintiffs because "the words 'governmental purposes' in the exemption clause of the motor carrier act have a much more general application and meaning."

We agree with the trial court's conclusion in regard to the limited meaning of *Borski.* This case only discloses that the facts and circumstances of each case determine whether a city is engaged in a proprietary or governmental function.

In *Grand Rapids Motor Coach Company* v. *Public Service Commission,* 323 Mich 624, we construed the words used in the exemption provisions of subdivision (a), which precedes the exemption provisions of subdivision (c) which is at issue in this appeal.

Subdivision (a) provides:

"This act shall not apply to:

"(a) Vehicles operated entirely within any city or village of this State; nor to motor carriers of passengers whose local operations may extend a distance of not to exceed 2 miles beyond the boundary of such city or village in which such local operations are wholly carried on, provided such extension shall not be to or into another city or village." CLS 1961, § 479.2 (Stat Ann 1965 Cum Supp § 22.567).

The words "wholly carried on" were in dispute in *Grand Rapids Motor Coach,* whereas the dispute in the present appeal concerns the words "for governmental purposes."

In construing subdivision (a) in the *Grand Rapids* case, we held:

(a) That the Court is required to discover the legislative intent and that, if the language is of doubtful meaning, a reasonable construction must be given, looking to the purpose to be served thereby;

(b) That the general rule, that exemptions are carefully scrutinized and not extended beyond their plain meaning, should be applied;

(c) That the purpose shall prevail over the strict letter;

(d) That the act as a whole must be considered and especially the intent of a section listing exemptions from the application of the act.

We have stated that the motor carrier act was enacted to grant the public service commission, and *not the common motor carrier of passengers for hire*, the right to decide what public service was adequate and proper.[4]

The question in this appeal resolves itself to a determination of whether the legislature intended to grant to cities the right to extend their transportation systems 10 miles beyond the city boundaries, irrespective of whether that extension disrupted or helped the mass transportation plan as it existed in that 10-mile area.

In answering this question we use the rules of construction of legislative intent that we used to determine legislative intent *in re* the exemption provisions of subdivision (a).[5] And we conclude that the operations by the DSR as a common motor carrier of passengers for hire outside the corporate limits of the city of Detroit are subject to the provisions of the Michigan motor carrier act.

## Question No. 3.

Does PA 1939, No 3, § 6, as amended by PA 1960, No 44,[6] which provides:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law,"

---

[4] *Associated Truck Lines, Inc.,* v. *Public Service Commission,* 377 Mich 259.

[5] *Grand Rapids Motor Coach Co.* v. *Public Service Commission, supra*

[6] CLS 1961, § 460.6 (Stat Ann 1965 Cum Supp § 22.13[6]).

exempt the DSR from the provisions of the motor carrier act?

In deciding that it did exempt the DSR from the provisions of the motor carrier act, the trial court confined its opinion to construing the words: "and *except* as otherwise restricted by law," to be words that "refer to the regulatory power of the commission, not to the exemption of municipally owned utilities."

Plaintiffs, disagreeing with the trial court's interpretation, state:

"Moreover, a contrary holding [to plaintiffs' position] would ignore the 'unquestioned rule of grammar, which has been crystallized into a legal maxim' that qualifying and relating words 'must ordinarily be referred to the next antecedent. * * * The last antecedent is the last word which can be made an antecedent, without impairing the meaning of a sentence.' *City of Traverse City v. Blair Township,* 190 Mich 313, 323, 324 (Ann Cas 1918E, 81). Clearly the last antecedent in section 6 to which the clause 'except as otherwise restricted by law' can refer is 'municipally owned utilities.' Indeed 'it is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent.' *Kales v. City of Oak Park,* 315 Mich 266, 271."

We agree with plaintiffs' contention in this regard and, also, with their statement that "had it been the intent of the legislature by Act 3, PA 1939, to repeal the provisions of the motor carrier act, such intent 'would have been made manifest in clear and unmistakable language.' Rather than so providing, however, the legislature expressly conditioned exemptions with respect to municipally owned utilities 'except as otherwise restricted by law.'" A clear intention to repeal must be shown.

The law does not favor repeals by implication. *Yarger v. City of Hastings*, 375 Mich 413.

Defendant's brief does not answer plaintiffs' contention, nor does defendant comment in its brief on the many reasons plaintiffs set forth in their brief under the chapter heading, "The exemption in section 6 is qualified and is not applicable to the DSR."

The Court of Appeals gave no reason why it concluded that this section exempts the DSR.

As we concluded above under question 2, the legislature's intent was to include municipally owned carriers under the regulatory provisions of the motor carrier act.

No legislative intention was manifested to exempt such carriers and repeal any part of the motor carrier act by the enactment of the public service commission act.

In the 1939 public service commission act the legislature abolished the Michigan public utilities commission which had been brought into existence by PA 1919, No 419. The 1919 act that created the public utilities commission gave the commission the right to regulate utilities furnishing steam, power or gas, and provided cities with an exemption by the words: "The power and authority granted by this act shall not extend to, or include, any power of regulation or control of any municipally owned utility." CL 1948, § 460.54 (Stat Ann § 22.4).

In abolishing the Michigan public utilities commission, and creating the commission now in power, the title of the act (PA 1939, No 3) discloses that the act was designed "to abolish the Michigan public utilities commission, and to confer the powers and duties now vested by law therein, on

the public service commission hereby created;" and section 4 of the act adds that: "All the rights, powers, and duties vested by law in said Michigan public utilities commission   *   *   *   shall be deemed to be transferred to and vested in the Michigan public service commission hereby created."

Thus, the title and section 4 of the public service commission act made it clear that the legislature did not by this act intend to repeal any of the pre-existing jurisdiction exercised by the public utilities commission, which included jurisdiction and authority to regulate common motor carriers. (Title, PA 1933, No 254.)

We concur with plaintiffs' conclusion that:

"PA 1939, No 3, has been before our Court several times, and in each instance has been held to be a mere outline of jurisdiction vesting the commission with no specific powers, *Huron Portland Cement Company* v. *Public Service Commission,* 351 Mich 255. If it grants no powers it certainly cannot take away any existing powers."

" 'An act will not be construed to repeal or modify earlier legislation, if, giving such effect to the act, an apparent purpose would appear to disturb an established system of written law, covering a vital field in our system of government.' 25 RCL p 919." *Attorney General, ex rel. Owen,* v. *Joyce,* 233 Mich 619, 623.

Therefore, we conclude that the operations of the DSR as a common motor carrier of passengers are not exempted from the motor carrier act by provisions of the public service commission act.

The judgment of the Court of Appeals is affirmed but not for the reasons given therein, and this case is remanded to the Wayne circuit court for further

action in accordance with this opinion. No costs, a public question being involved.

Dethmers, C. J., and Adams, J., concurred with Kelly, J.

O'Hara, J. (*concurring in affirmance*). I concur in the result reached by Mr. Justice Kelly but on the grounds and for the reasons set forth in the majority opinion of the Court of Appeals.

Souris, J. (*dissenting*). The cities of Detroit and Livonia are a bit less than two miles distant from one another. In August of 1964, Detroit's department of street railways (DSR) began to operate buses on a route that extends into Livonia for a distance of about two and one-half miles from Detroit's boundary nearest Livonia. The DSR did not obtain approval from the State's public service commission for this extension of service.

Northville Coach Lines, Inc., a privately owned corporation, had been operating its buses along the same route, and beyond the point in Livonia where the DSR stops, under authority granted it by the public service commission. Northville brought this suit to enjoin the DSR's Livonia operations and the Michigan Motor Bus Association was allowed to intervene as a party plaintiff by order of the circuit judge.

At commencement of suit, there was issued and served upon defendant, DSR, an order to show cause why an injunction should not be entered restraining it from operating its buses into Livonia during the pendency of suit. The circuit judge's opinion discloses that judgment of dismissal followed hearing on the order to show cause. That

judgment was based upon the circuit judge's con-
clusions that the DSR legally could operate its
buses within 10 miles from Detroit's city limits;
that it was not subject to regulation by the public
service commission; and that, therefore, plaintiffs
were not entitled to the relief they requested as
a matter of law.

The Court of Appeals, by divided vote, reversed
the judgment of dismissal and remanded the cause
to the circuit court for entry of an order granting
injunctive relief.[1] *Northville Coach Lines, Inc.,* v.
*City of Detroit* (1966), 2 Mich App 591. We
granted leave to appeal.

Mr. Justice Kelly has written to affirm the
Court of Appeals and to remand the cause to the
circuit court for further proceedings. We disagree,
believing that the judgment of the Court of Ap-
peals should be reversed and that the circuit court's
judgment of dismissal should be affirmed.

1.

Article 7, § 24 of the Constitution of 1963 pro-
vides, pertinently:

"Subject to this Constitution, any city or village
may acquire, own or operate, within or without
its corporate limits, public service facilities for
supplying   *   *   *   transportation to the munic-
ipality and the inhabitants thereof.

"Any city or village   *   *   *   may operate trans-
portation lines outside the municipality within such
limits as may be prescribed by law."

Our task on this appeal is to determine the con-
stitutionally authorized limitations prescribed by

---

[1] We presume that the Court of Appeals did not intend to deprive
defendant of a hearing in the circuit court on the merits and that,
therefore, by its order of remand for entry of an order granting
injunctive relief, it meant an injunction *pendente lite.*

law upon a city's constitutionally granted right to operate transportation lines outside its boundaries.

Detroit is a home-rule city, and its charter[2] authorizes the city to operate its buses beyond its city. limits but within a distance of 10 miles from any portion of its corporate limits.

This charter authority is derived from section 4f of the home-rule cities act,[3] which reads as follows:

"Sec. 4f. Each city may in its charter provide:
\*   \*   \*

"(2) For owning, constructing and operating transportation facilities within its limits, and its adjacent and adjoining suburbs within a distance of 10 miles from any portion of its city limits, if according to the next preceding United States census, or local census taken by authority of a resolution of the legislative body of such city, it had a population not less than 25,000 inhabitants" CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079).

The majority opinion of the Court of Appeals, over a vigorous dissent, construed the statutory language "its adjacent and adjoining suburbs" as if the word "adjacent" meant "adjoining" and thereby effectively deleted the word "adjacent" in its interpretation of the quoted phrase. That court's majority concluded that the statute, therefore, permits a municipality to operate its transportation facilities beyond its borders but only into adjoining suburbs, that is to say, suburbs the boundaries of which touch the boundaries of the municipality providing the transportation services.

---

[2] Title 4, chap·13, § 23.

[3] PA 1909, No 279, as amended, CL 1948 and CLS 1961, § 117.1 *et seq.,* as amended (Stat Ann 1949 Rev and Stat Ann 1963 Cum Supp § 5.2071 *et seq.*).

In common parlance, the word "adjacent" might be regarded to mean the same thing as "adjoining"; *i.e.,* next to, touching, bordering. Webster's Third International Dictionary,[4] as the dissent in the Court of Appeals notes, recognizes "adjacent" to have a permissible meaning of "not distant or far off: nearby but not touching." Webster's International Dictionary[5] gives the word's preferred meaning as "lying near, close, or contiguous; neighboring; bordering on; as, a field *adjacent* to the highway." The word "adjacent" thus might be taken to mean "adjoining." Yet to do so is to impute to the legislature a nonsensical purpose when there is available another meaning which is rational. Based on Webster's definition of "adjacent," either edition, we can construe the word, rationally, in context, to mean "nearby, but not bordering upon."

Such an interpretation is entirely consistent with, and draws some support from, the language found in subsection (3) of section 4f of the home-rule cities act. That subsection is quoted in pertinent part in the margin.[6] The suggested interpretation is consistent with the quoted language of subsection (3), "and for the operation of transportation lines without the municipality and within 10 miles from its corporate limits."

---

[4] Webster's Third New International Dictionary (1965), p 26, "adjacent."

[5] Webster's International Dictionary (1894), p 21, adjacent.

[6] "Sec. 4f. Each city in its charter may provide: * * *

"(3) For the purchase and condemnation of private property for any public use or purpose within the scope of its powers; also for the acquirement, ownership, establishment, construction and operation, either within or without its corporate limits, of public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof, for domestic, commercial and municipal purposes; * * * and for the operation of transportation lines without the municipality and within 10 miles from its corporate limits." CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079).

· ·If judicial support of this interpretation of the word· "adjacent" be needed, it can be found in one of our own cases, *Henry* v. *Sinclair* (1922), 218 Mich·296. *Continental Improvement Co.* v. *Phelps* (1882), 47 Mich 299, suggests a contrary conclusion based upon what the Court called "a very proper concession," p 303. Perhaps both cases can be reconciled on the basis that they construed the word "adjacent," paying due regard to the varying context of the word's use, as I believe we must in the case at bar.

## 2.

Mr. Justice Kelly has concluded that the operations of the DSR which are the subject matter of this appeal have not been exempted from the public service commission's regulatory control either by the provisions of the motor carrier act[7] or by the provisions of the act creating the commission.[8] We disagree, the legislature having very clearly exempted from the commission's reach not only all municipally owned utilities, but also all vehicles owned or operated for governmental purposes by municipalities and other subdivisions of government.

When the motor carriers act of 1933 was adopted, the public utilities commission act[9] provided, as it had from its inception, in section 4 of the act:

"The power and authority granted by this act shall not extend to, or include, any power of regulation or control of any municipally owned utility; and it shall be the duty of said commission on the

---

[7] PA 1933, No 254, as amended, CL 1948, § 475.1 *et seq.*, as amended (Stat Ann and Stat Ann 1965 Cum Supp § 22.531 *et seq.*).

[8] PA 1939, No 3, as amended, CL 1948, § 460.1 *et seq.*, as amended (Stat· Ann. 1965 Cum Supp § 22.13[1] *et seq.*).

[9] PA 1919, No 419, as amended, CL 1948, § 460.51 *et seq.*, as amended (Stat Ann § 22.1 *et seq.*).

request of any city or village to give advice and render such assistance as may be reasonable and expedient with respect to the operation of any utility owned and operated by such city or village."

Thus, there simply cannot be any doubt that in 1933 the public utilities commission had no power to regulate any municipally owned utility. When the motor carrier act was adopted in 1933 the commission was given jurisdiction to regulate the use of the public highways of the State by motor carriers of passengers and property for hire.[10] However, that act explicitly exempted from its coverage certain motor vehicles. As originally written, and as it now reads, section 2(c) of article 5 of the act provided:

"Sec. 2.   This act shall not apply to:   *   *   *   .
"(c) Vehicles owned or operated by any incorporated city, village, or school district, or by any county or township in the State or by any corporation, agency or instrumentality of the same, for governmental purposes."

Thus, in 1933, not only did the public utilities commission act exempt from the commission's jurisdiction municipally owned utilities, the motor carrier act also exempted from the commission's jurisdiction all vehicles owned by a municipality and operated for governmental purposes. What this Court said about the proprietary nature of a municipally owned transportation system for the purpose of imposing common-law tort liability thereon in *Borski* v. *City of Wakefield* (1927), 239 Mich·656, and *Marks* v. *City of Battle Creek* (1959), 358 Mich 114, is irrelevant to the issue whether such a mu-

---

[10] Prior acts, PA 1923, No 209 and PA 1931, No 312, likewise had granted such jurisdiction to the public utilities commission. The 1931 act contained exemption language identical to that which now appears as section 2(c) of article 5 of PA 1933, No 254, but without the final clause "for governmental purposes."

nicipally owned transportation system is operated "for governmental purposes" within the above-quoted exemption provision of the motor carriers act.

This Court has very recently held that our Constitution limits the power of government to such as exhibit a "public purpose." See *City of Gaylord* v. *Gaylord City Clerk* (1966), 378 Mich 273, 294–301, and the mere fact that in tort cases we describe a function of government as proprietary does not imply that it is not performed for a public purpose. In the *City of Gaylord Case* this Court equated the terms "public purpose" and "governmental purpose" in upholding the validity of legislation authorizing municipalities to issue revenue bonds and to use the proceeds therefrom to purchase industrial facilities for lease and resale to private concerns, the Court having found that such municipal activities are beneficial to the economic welfare of the municipality's inhabitants and, therefore, constitutionally permissible. Considering this Court's decision in *City of Gaylord, supra,* and, as well, *Gregory Marina, Inc.,* v. *City of Detroit* (1966), 378 Mich 364, it would seem beyond dispute that transporting Detroiters into nearby suburbs to their work and for their recreation and transporting suburban residents into Detroit to their work, for shopping, and for recreation, constitutes a governmental purpose within the meaning of that term as used in the above-quoted exemption provision of the motor carriers act.

That was the statutory situation as it existed in 1939 when the act creating the public service commission and transferring all of the powers and duties of the public utilities commission to it was adopted. That act, PA 1939, No 3, as did the public utilities commission act, continued the express

exemption of municipally owned utilities in the following apodictic language:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law." CL 1948, § 460.6 (Stat Ann 1965 Cum Supp § 22.13[6]).

It has been suggested that the above-quoted statutory clause, "except as otherwise restricted by law," modifies the immediately preceding exception, "except any municipally owned utility," and, presumably, that somewhere else in our statute books can be found a legislative "restriction" upon the municipally owned utility exemption! The fallacy of this suggestion rests not alone upon the absence of any other statutory provision subjecting municipally owned utilities to public service commission regulation, but it rests also upon its significant disregard of the conjunctive "and" between the two statutory exceptions to the grant of complete power and jurisdiction to the commission to regulate all public utilities in the State: "except any municipally owned utility *and* except as otherwise restricted by law." Finally, the fallacious suggestion requires that we read the word "restricted" to mean "provided" by law. In short, it is our interpretation of the statute that it grants the commission complete power and jurisdiction to regulate all public utilities in the State, with two exceptions. The first exception is "any municipally owned utility," and the second exception is left for future legislative determination, "as otherwise restricted by law."

We hold that the DSR may operate its buses into Livonia, within 10 miles of any Detroit boundary and notwithstanding that Livonia does not adjoin Detroit; that such operations of the DSR, in-

side or outside Detroit, are not subject to the provisions of the motor vehicle carrier act nor otherwise subject to the jurisdiction of the public service commission; and, therefore, that the decision of the Court of Appeals should be reversed. We would tax no costs, public questions being involved.

T. M. KAVANAGH, J., concurred with SOURIS, J.

BLACK, J. (*dissenting*). Looking as the various opinions do at too many posed questions, I suggest respectfully that the Court is not concentrating enough attention upon that critically controlling provision which, since 1933, has denied to the defendant city the exemptive right claimed by its pleaded affirmative defense No. 1, headed *"Exemption from regulatory provisions of motor carrier act."* That provision entered the legal picture as section 2, subd (c) of article 5 of PA 1933, No 254. It is cited officially now as CLS 1961, § 479.2, subd (c) (Stat Ann 1965 Cum Supp § 22.567, subd [c]). The controlling question raised by the provision is whether the legislature intended by 2, subd (c) to exempt, from application of the act of 1933, vehicles owned and operated by the defendant city in the course of that which plaintiff would have placed under the jurisdiction and control of the public service commission.

The parties originally regarded this question as one of controlling importance. Plaintiff stated, and the defendant city accepted, this as the first posed issue:

"Are the operations by the DSR as a common motor carrier of passengers for hire outside the corporate limits of the city of Detroit subject to the provisions of the Michigan motor carrier act,

PA 1933, No 254, as amended (CL 1948 and CLS 1961, § 475.1 *et seq.*, [Stat Ann and Stat Ann 1963 Cum Supp § 22.531 *et seq.*])?"[1]

I agree with plaintiff that the stated question deserves an affirmative answer. If such is the correct answer, then for the purposes of instant judgment it matters not that the defendant city "may in its charter provide" this or that or anything else that may be pertinent to the defendant city's questioned operations. The right to provide, in a city's charter, all of the things authorized by the home-rule act is expressly made subject to "such limits as may be prescribed by law" (Const 1963, art 7, § 24) and section 2, subd (c) has, since its effective date, prescribed a specific "limit" which qualifies and conditions the defendant city's chartered right to "operate transportation lines outside the municipality."

This does not mean that the defendant city cannot operate at all. See plaintiff's position on that score, related by the panel below (*Northville Coach Lines, Inc.* v. *City of Detroit,* 2 Mich App 591, 595). It does mean, by force of the legislature's constitutionally applied will, that the defendant city may in the context of this case operate lawfully only after having applied for and obtained the necessary certificate of public convenience and necessity. The reason is that the vehicles operated by it, now in judicial scrutiny, are not exempt from the jurisdiction of the public service commission.

---

[1] "Sec. 1. Unlawful operation. No common motor carrier of passengers or property shall operate any motor vehicle for the transportation of either persons or property for hire on any public highway in this State except in accordance with the provisions of this act. It shall be unlawful for any common motor carrier of passengers or property to operate upon any public highway without first having obtained from the commission a certificate of public convenience and necessity." CL 1948, § 476.1 (Stat Ann § 22.534),

To the point of the stated and accepted question above I agree in general with the reasoning of Justice KELLY. More should be said though, simply to harry and wear down the yet persistent notion of some here that judges of high appellate courts are especially endowed with duty to knead and mold long standing statutes and constitutional provisions so that each new sculpt thereof may conform with contemporaneously dixitized view, today's mores considered, of what the people or their elected representatives should have enacted into law.

Now I cheerfully admit to being what some of the Brethren regard as a quaint if not stubborn stickler for judicial ascertainment of legislative intent by going back to the laws and usages of the time of enactment, by attempting to place myself as interpreter in the position of the enacting legislators, and by trying to look at things legal and circumstantial as they then were,—all to divine if possible what *those* legislators wished understood by lawyers and judges when *they* employed critically specific words of enactment. The applicable rule of construction appears by separate opinion in *Mosier* v. *Carney,* 376 Mich 532, 591, 592; *French* v. *Mitchell,* 377 Mich 364, 383; *Trbovich* v. *City of Detroit,* 378 Mich 79, 94 and *Superx Drugs Corporation* v. *State Board of Pharmacy,* 378 Mich 430, 485. It was approved and applied unanimously on two occasions (*Wayne County Board of Road Commissioners* v. *Wayne County Clerk,* 293 Mich 229, 235 and *Husted* v. *Consumers Power Co.,* 376 Mich 41, 54)[2] with source tracing back to *Platt* v. *Union Pacific R. Co.,* 99 US 48, 63, 64 (25 L ed 424):

---

[2] *Husted* was an opinion by the Court, soothingly headed "PER CURIAM." It bears the unrestricted indorsements of remaining Justices KAVANAGH, SOURIS and ADAMS, plus of course those of Justices DETHMERS, BLACK and O'HARA.

"There is always a tendency to construe statutes in the light in which they appear when the construction is given. It is easy to be wise after we see the results of experience. * * * But in endeavoring to ascertain what the congress of 1862 intended, we must, as far as possible, place ourselves in the light that congress enjoyed, look at things as they appeared to it, and discover its purpose from the language used in connection with the attending circumstances."

The exemption provided by 2, subd (c) was intended to apply only to vehicles owned and operated by an incorporated city *for governmental purposes.* Section 2, subd (c) did not exempt vehicles owned or operated by incorporated cities *for nongovernmental purposes.* All this, I take it, is conceded. Let us turn then to the legal circumstances and recorded discourse of 1933 to determine whether the operation of vehicles by cities, as common motor carriers of passengers for hire, was regarded then by the legislature as "for governmental purposes" and, particularly, whether the Supreme Court of Michigan (the Court that was "there" at the time) then would have held that 2, subd (c) should be applied other than according to the decisions cited next.

But first let us array, for demonstrative-comparative view, what each legislator of 1933 held in hand as he pondered voting new 2, subd (c) into effect. Turning to pages 517 and 518 of PA 1931, No 312, we find that the corresponding provision of the statute was then designated as section 13(c). Turning to pages 421 and 422 of PA 1933, we find that each legislator had before him at the time a measure which in finally adopted fact amended said section 13(c). Here are the two, side by side:

| *1931 section 13, subd (c)* | *1933 section 2, subd (c)* |
|---|---|
| "Sec. 13. This act shall not apply to: * * * | "Sec. 2. Exemptions. This act shall not apply to: |
| "(c) Vehicles owned or operated by any incorporated city, village, or school district, or by any county or township in the State or by any corporation, agency or instrumentality of the same;" | "(c) Vehicles owned or operated by any incorporated city, village, or school district, or by any county or township in the State or by any corporation, agency or instrumentality of the same, for governmental purposes;" |

No member of the legislature, engaged during the session of 1933 in contemplative thought upon insertion by section 2, subd (c) of the condition "for governmental purposes," could have mistaken the exact meaning and legal purpose of that phrase after having read the then unanimous as well as recent cases of *Foss* v. *City of Lansing*, 237 Mich 633 (52 ALR 185); *Borski* v. *City of Wakefield*, 239 Mich 656;[3] *Powell* v. *Village of Fenton*, 240 Mich 94, *Curry* v. *City of Highland Park*, 242 Mich 614, and *Johnson* v. *Board of County Road Commissioners of Ontonagon County*, 253 Mich 465. When lawyers, legislators and judges spoke at the time of a "governmental function" or, synonymously, of a "governmental purpose," they meant to employ the then widely understood distinction between what was governmental in a municipal way and what was proprietary in a municipal way. Will someone gainsay this, with some semblance of plausible support?

It was not until recent years that legislators were required to speculate and then guess whether this Court will or will not apply legal words and phrases as the Court has defined and applied them before. Certainly no legislator of 1933 could be expected to foresee that some here might, more than a generation later, suggest that *Borski* and the other cases

3 *Borski* was followed expressly, with copious quotation, in *Marks* v. *City of Battle Creek*, 358 Mich 114, 118–120.

cited above really didn't delineate "governmental"
purpose or function for meaningfully dependable
usage in the writing of 1933 legislation. *Borski*
proceeded (pp 660, 661):

"It is conceded that in operating a bus line to the
Plymouth mine the city of Wakefield was not exer-
cising any political or governmental power, but was
engaged in a purely business enterprise for hire.
\* \* \*

"It may be presumed that this was known to the
legislature, and therefore it is a reasonable infer-
ence that in enacting the statute requiring the pre-
sentation of claims as a condition precedent to an
action, the legislature did not intend that the city
should have the benefit of it while engaged in a
strictly private business."

*To conclude:*

If the question stated above deserves an affirma-
tive answer, then no other presented question re-
quires discussion. I perceive ahead no great dis-
aster should the defendant city's mentioned opera-
tions be judged subject to the inhibitory and fairly
competitive provisions of said section 476.1. And
if by that judgment some cloud of catastrophe
should gather in the west, the legislature may easily
restore 1931 section 13, subd (c). That section, not
section 2, subd (c), really did exempt to the extent
claimed presently by the defendant city.

Some scholar should be able to tell us, lawyers
and judges all, why and for what end the qualifying
words "for governmental purposes" were inserted
in the act of 1933, if the precise intent was not to
restrict that which by 13, subd (c) was theretofore
unrestricted. If the senators and representatives
assembled in 1933 didn't intend to change 13, subd
(c) by 2, subd (c), why withal did they make the
change we see before us? Perhaps, though, it will

be said that the quoted qualifying words were inserted idly by pawky gentlemen of that day with expectation that, sooner or later, the judicial branch would "subsume" them, just as was moved for disposition of "reasonable compensation" in *French* v. *Mitchell, supra,* at 374 and countered at 378, 383, 385.

I vote to reverse and remand for entry of such judgment as will effectively bring the defendant city's aforesaid vehicles, and accordingly the presently criticized operation thereof, within the jurisdiction of the public service commission. No costs should be awarded, of course.

BRENNAN, J., took no part in the decision of this case.